**In re Robert Vincent WEYAND, Debtor.**

**Bankruptcy No. 83 B 2242 G.**

United States Bankruptcy Court,
D. Colorado.

Sept. 6, 1983.

---

Milnor Senior, III, Denver, Colo., for debtor.

Michael Westover, Denver, Colo., for Colorado Nat. Bank—Boulevard.

Charles Davis, Denver, Colo., for Chapter 13 Standing Trustee.

## MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER comes before the Court on an Objection to Confirmation filed by the Colorado National Bank—Boulevard (hereinafter referred to as "Bank") and by the Chapter 13 Trustee.

The debtor, Robert V. Weyand, filed for protection under Chapter 13 on May 20, 1983. Prior to filing, on February 19, 1982, Weyand transferred three pieces of real estate to his wife, Lila S. Weyand. These transfers were pursuant to a post-nuptial agreement entered into between Weyand and his wife on February 19, 1982, executed the same day the transfers occurred.

The properties transferred were the debtor's one-half interest in the family home, the debtor's interest in mountain property in Summit County, Colorado, and the debtor's interest in property near Morrison, in Jefferson County, Colorado. The total equity in the family home was approximately $84,000.00, with the debtor's equity being $42,000. The value of the Summit County property was not established, but Weyand paid $22,800.00 for this property in 1979. No liens were noted on that property. The Morrison property was purchased for approximately $2,600 to $2,800, 10 to 13 years ago. No present value was established, and no liens were noted. All transfers of real estate were by quit-claim deed.

Additionally, Weyand sold securities in a Hamilton Fund in March or April, 1983, for $11,000.00 and gave all the proceeds to his wife after payment of "a couple of little bills." No indication was presented that

such a conveyance was for a special gift or that any consideration was received. On the contrary, the debtor offered the same explanation for this transfer as for the transfers of real estate.

The explanation offered by the debtor, which the Court accepts, was that he wished to protect against "harrassment" lawsuits and preserve property for his wife. Weyand is a police officer with the Denver Police Department, presently assigned as a detective to the bomb unit. He has been employed as a police officer for thirty and one-half years. In connection with his activities as a police investigator, Weyand was involved in the Franke (kiko) Martinez investigation, and expressed some fear of the possibility that a retaliatory harassment lawsuit might result from that involvement. Weyand also expressed concern at such possible litigation involving other so-called "militant" groups. An additional concern, causing Weyand to make the transfers herein, was the lawsuit against a co-officer, Monica David, wherein she was sued for $50,000,000.00 in actual damages and $50,000,000.00 in punitive damages resulting from her involvement as an undercover investigator. It is Weyand's stated fear that he is similarly vulnerable to such possible lawsuits.

Finally, and perhaps of greatest concern to the debtor, there was the seemingly endless litigation which the debtor experienced in connection with his divorce from his first wife. This controversy consumed approximately four and one-half years and went through the Appellate Courts of the State of Colorado.

These factors, according to Weyand, caused him to make the conveyances which are the subject of this objection to confirmation. He states that many other officers of the Denver Police Department are making the same kinds of conveyances.

At the time of the transfers, there was litigation pending in the state court wherein the Colorado National Bank—Boulevard had commenced an action against the debtor and others as a result of the transaction giving rise to the claim filed by the Bank in this bankruptcy. That claim is in the amount of $33,752.50. A Proof of Claim was timely filed on June 17, 1983, four days before the first meeting of creditors, which occurred on June 21, 1983.

The debtor claims this litigation in the State Court had little or no bearing on his decision to make the conveyances to his wife, since he allegedly has defenses to that action and never considered himself to be personally liable on that claim. However, the same attorney who represented the debtor in the State Court litigation against the Bank also drafted the post-nuptial agreement and the quit claim deeds herein. It is difficult for this Court to accept the testimony that no consideration was given by the debtor to the pending State Court litigation when he made the conveyances complained of in this action. That pending litigation appears to be part and parcel of all of the debtor's fears of litigation and resultant loss of his property.

It is noted that no objection to the Bank's Proof of Claim has been filed to this date. Thus, under 11 U.S.C. § 502(a), that claim is deemed allowed.

The Chapter 13 Statement lists unsecured debts in the amount of $28,801.00, including the disputed loan to the Bank in the amount of $25,000.00. The Proof of Claim of the Bank indicates the total claim is $33,752.50. Thus, if the Proof of Claim is correct, the total unsecured indebtedness is $37,553.50. The Plan then seeks to discharge this unsecured indebtedness with payments of $3,800.00 over a period of 24 months. The unsecured creditors will receive 100% of their claims except the Bank which receives nothing. The secured claims total $21,593.00. These represent a first and second mortgage indebtedness on the family residence and are to be paid in full outside the Plan. There is no default on these indebtednesses at this time, nor was there on the date of filing.

The schedules of property owned by the debtor indicates that most of the property not transferred to his wife is claimed as exempt.

The budget submitted by the debtor suggests a need for $500.00 per month for food, although the children have moved from the home. Additionally, $200.00 for clothing is claimed, together with telephone expense of $125.00 per month and an additional amount of $200.00 for "miscellaneous family & emergency expenses." The debtor explained that his position on the police force requires telephone expenses of "call forwarding" and "call holding". Further, long distance calls to his son in Germany and his mother in Illinois were included in the claimed telephone expense. Although the debtor lives 7 to 8 miles from work and the City pays his gasoline on the job, he still claims $200.00 for transportation. The total monthly living expense of the family is alleged to be $2,121.00, with a net income of $2,455.00. The estimated excess is $334.00, of which the debtor proposes to pay $200.00 per month under the Plan for 24 months.

The Bank objects to confirmation of this Plan on the grounds the conveyances to Weyand's wife would be voidable under 1973 C.R.S. 38–10–117, and, thus, voidable by a Trustee under § 544(b) of the Code if this matter were in Chapter 7. This would result in unsecured creditors receiving much less under Chapter 13 than they would receive under Chapter 7. The Bank also claims the Plan was not proposed in good faith and should, therefore, not be confirmed. The Chapter 13 Trustee, likewise, suggests the Plan "may well not be proposed in good faith."

## CONCLUSIONS OF LAW

The debtor's own testimony clearly establishes that all conveyances to his wife were made with the intent to hinder or defraud creditors or other persons to whom this debtor was or might become liable for damages or other indebtedness. His stated desire to protect property from "harrassment" litigation only becomes effective if that litigation results in a judgment against him. Further, litigation was pending in the State court between the debtor and the objecting creditor here when the transfers were made. All reasons given by the debtor to explain the transfers to his wife demonstrate a stated desire to defraud creditors as defined in 1973 C.R.S. 38–10–117 and § 548 of the Code.

■ The transfers of real estate occurred over one year prior to the filing of bankruptcy. Thus, such transfers are not avoidable under § 548 of the Code. However, these transfers could well be void through § 544(b) and § 38–10–117 of the Colorado Statutes. As such, the power of avoidance would be vested in a Trustee if this matter were in a Chapter 7 liquidation.

The Colorado Statute, 38–10–117, states as follows:

"38–10–117. Conveyances to defraud creditors void. Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods, or things in action or of any rents and profits issuing thereupon, and every charge upon lands, goods, or things in action or upon the rents and profits thereof made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demand, . . . as against the person so hindered, delayed, or defrauded shall be void."

The decisions interpreting the above statute hold that in transactions between a husband and wife, the burden is on the husband and wife to establish honesty and a lack of intent to hinder and defraud creditors. *United States v. Morgan,* 554 F.Supp. 582 (D.Colo.1982); *Helm v. Brewster,* 42 Colo. 25, 93 P. 1101 (1908); see *First National Bank v. Kavanaugh,* 7 Colo.App. 160, 43 P. 217 (1895).

The transfer to the wife of $11,000 resulting from the sale of Hamilton Funds securities in 1983 was barely pre-petition. This transfer would be avoidable under 11 U.S.C. § 548(a)(1). It is also subject to 1973 C.R.S. 38–10–117.

Confirmation of a Chapter 13 bankruptcy Plan requires the Court to find that the Plan has been proposed in good faith under 11 U.S.C. § 1325(a)(3). The test of "good faith" in this district is clearly set forth in

*Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983). There, the Court sets forth eleven specific factors to be considered, but states: "This list is not exhaustive, and the weight given each factor will necessarily vary with the facts and circumstances of each case". *Flygare v. Boulden, supra,* at page 1348. The Court also quotes with approval from *In re Estus,* 695 F.2d 311 (8th Cir.1982), as follows:

"[T]he proper inquiry should follow the analysis adopted by the Fourth Circuit [*In re Deans,* 692 F.2d 968]: whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case. If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied."

■ Here, I find and conclude that the Plan is predicated on fraudulent transfers. Thus, it constitutes an abuse of the provisions, and perverts the whole purpose and spirit of Chapter 13. Accordingly, confirmation must be denied on the basis of the fraudulent transfers, alone.

However, there are additional concerns as addressed in *Flygare, supra.*

■ The purpose of Chapter 13 was to provide an effective system to resolve consumer bankruptcies and to encourage more debtors to attempt to pay their debts under Court supervision. *In re Estus, supra,* CHR Rep. No. 95–595, 95th Cong.2d Sess. 4, U.S. Code Cong. & Admin.News 1978, p. 5787. Congress fully expected that debtors would be given the opportunity to avoid the stigma attached to straight bankruptcy, protect their credit standing better than in liquidation, and the debtor would be allowed to retain property by agreeing to repay his creditors to the extent possible over a specified period of time. CHR Rep., *supra.* Such a purpose must encompass the expectation that the debtor will use his or her best efforts to accomplish repayment to creditors in the maximum amount possible while still providing support for himself and his family.

This purpose must be kept in mind when evaluating the factors set for in *In re Flygare, supra,* and *In re Estus, supra.*

Here, Weyand provides for full repayment to all unsecured creditors except the Bank, who gets nothing under the Plan. Weyand disputes liability; so, he ignores the Bank in his Plan. However, no objection to the Bank's claim has been filed. Thus, it is presumed allowed under 11 U.S.C. § 502(a). This disparity in treatment between one class of unsecured creditors versus the Bank is totally unexplained except for the debtor's dispute of the Bank's claim, although no objection was filed to that claim.

■ In the meantime, Weyand proposes to continue to live on a very liberal budget, making no effort to resolve the dispute with the Bank, content to leave the Bank in the position of being stayed from further action. It appears from the evidence that the debtor's budget is overstated by at least $500, which would leave in excess of $800 as a surplus of income over expenses. Thus, a Plan which calls for payments of $200 per month is niggardly. The Plan is only for 24 months, as opposed to a more generally accepted 36 month period, which could be extended even further for cause shown. Thus, there is no question of the debtor's ability to accord the Bank better treatment. It is simply that the debtor chooses to disregard this disputed, unobjected-to, claim.

For all of the reasons indicated, the Court is concerned about the motivation and sincerity of the debtor in seeking Chapter 13 relief, and this Court will not be a party to confirming a Plan replete with fraudulent transfers, total disregard of a major debt and other ill-favored motives.