**In re Joseph A. GENOVA, Jr., Trustee, Plaintiff,**

v.

**TRIANGLE TRUCK SERVICE, INC., R. Richard Wright and Russell L. Jewett, Defendants.**

**Bankruptcy No. 84 M 0256.**

United States Bankruptcy Court, D. Colorado.

July 23, 1984.

Joseph Genova, Jr., pro se.

Victor Moss, Pueblo, Colo., for defendants.

FINDINGS OF FACT, CONCLUSIONS AND ORDER ON TRUSTEE'S COMPLAINT TO VOID PREFERENTIAL TRANSFER

JOHN F. McGRATH, Bankruptcy Judge.

This matter comes before the Court on the Trustee's Complaint for Avoidance

of a Preferential or Fraudulent Transfer and for Turnover. Preliminarily, since the transfer attacked by the Trustee occurred more than one year prior to the filing of the petition on September 12, 1983, under Chapter 7 of the Bankruptcy Code, section 547(b) cannot be relied upon by the Trustee. Consequently, the only issue is whether the Trustee can employ section 544(b) of the Code and Colo.Rev.Stat. § 38–10–117, (1983) to void the transfer.

■ Triangle Truck Service, Inc. (Debtor) was in the truck repair business. The testimony at the hearing on the Trustee's Complaint established that it ceased operations on March 31, 1982. At that time, R. Richard Wright (Wright) was president of and managed the Debtor. Russell L. Jewett (Jewett), Wright's father-in-law, was a creditor of the Debtor as evidenced by a promissory note dated January 15, 1981, for $100,000 bearing an interest rate of 12% per annum. The note was in default on February 1, 1982, when the Debtor failed to make the first payment. The security for the note was "the shop equipment and tools and office equipment and supplies belonging to said company." A list of the security was attached to and referenced in the note.

In April of 1983, shortly after the Debtor ceased operations, Wright transferred to Jewett the Debtor's equipment and tools. This is the transfer that the Trustee asserts is voidable pursuant to section 544(b) of the Code and Colo.Rev.Stat. § 38–10–117. The Trustee claims that the value of the equipment and tools exceeded the amount of the indebtedness owed Jewett and that the transfer was made with the intent to hinder, delay or defraud creditors.

Section 544(b) allows the Trustee to utilize applicable state law to avoid transfers of the Debtor that would be fraudulent under that state law. Unquestionably, there exist unsecured creditors with allowable claims whose rights the Trustee may act upon pursuant to section 544(b). The sole issue before the Court asks if the transfer by Wright to Jewett was fraudu-lent under Colo.Rev.Stat. § 38–10–117, the applicable state law.

In *Genova v. Champion*, 33 B.R. 930 (Bankr.Ct.Colo.1983), this Court found, after analyzing the appropriate burdens of proof under Colo.Rev.Stat. § 38–10–117, that the Trustee had established a prima facie case with respect to several transfers of real estate from a debtor to his non-debtor wife. *Genova*, supra, held that once the transferee and transferor to show that the transfer was honest and without intent to defraud. See also *In re Weyand*, 33 B.R. 553 (Bankr.Ct.Colo.1983); *In re Carter*, 4 B.R. 692 (Bankr.Ct.Colo.1980); *Linker v. Linker*, 470 P.2d 882, 28 Colo.App. 136 (1970); *Chalupa v. Preston*, 177 P. 965, 65 Colo. 400 (1919). The uncontroverted testimony of both Wright and Jewett clearly evinced the existence of an indebtedness between Jewett and the Debtor for at least $112,000. The testimony of Jewett indicated that further contributions by Jewett to the Debtor-corporation may have even increased that amount by an additional $20,000. Consequently, the testimony of both the transferee and transferor established the consideration that Jewett gave for the equipment and tools.

The Trustee attempted to show that the consideration was inadequate because the value of the equipment and tools greatly exceeded the amount of the indebtedness. See *In re Carter*, supra. Jewett testified that, although he believed he was fully secured at the time he loaned the Debtor $100,000 in 1980, that when he received the equipment and tools from Wright in April of 1982, he only received "mostly junk". An expert witness testified that the tools and equipment transferred to Jewett in April, 1982, had an auction value of $14,-280. Despite some testimony that the Debtor-corporation was worth $465,000 (this was a sale price figure which included $150,000 for "goodwill" and $227,000 for inventory, which Wright returned to his suppliers, leaving, at *best*, a value of $88,-000 for the equipment and tools), this Court is persuaded by the expert's testimony. Consequently, the Court finds that the value of the property transferred by Wright

to Jewett in April, 1982, was worth a great deal less than what the Debtor owed Jewett, and that Wright and Jewett have sustained their burden of proof with respect to this "suspect" transfer. *In re Carter*, supra. This was an honest conveyance, made in good faith for valuable consideration and without any intent to hinder, delay or defraud creditors. *Krippendorf-Dittman Co. v. Trenworth*, 64 P. 373, 16 Colo.App. 178 (1901) (Wherein a debtor conveyed property to his brother, to whom he was indebted as evidenced by a note, and the court found that fraud as to creditors was not shown as the consideration was adequate.)

WHEREFORE, IT IS ORDERED that the Trustee's Complaint is dismissed.