In re Percy L. LEWIS, Lorretta M. Lewis, Debtors.

No. 06–20027–13.

United States Bankruptcy Court, D. Kansas.

Aug. 3, 2006.

David A. Reed, Kansas City, KS, for Debtors.

## OPINION DENYING CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN, AND GRANTING STAY RELIEF TO WELLS FARGO FINANCIAL

This matter is before the Court for rulings on the confirmability of the Debtors' Chapter 13 plan, and on Wells Fargo Financial's motion for stay relief. The Debtors appear by counsel David A. Reed. Wells Fargo appears by counsel Jill D. Olsen. The Court has reviewed the relevant materials and is now ready to rule.

In 2004, Debtor Lorretta [1] Lewis bought a van for her adult daughter, who does not live with the Debtors and is not their dependent, but could not get a loan in her own name. Ms. Lewis financed the purchase and gave a lien on the van to secure the loan. Wells Fargo is now the holder of the loan. The van is titled in Ms. Lewis's name, but her daughter drives it and was making the loan payments until the Debtors filed for bankruptcy in January 2006. The Debtors proposed a Chapter 13 plan under which they would pay Wells Fargo the value of the van as determined pursuant to § 506(a) of the Bankruptcy Code, and the balance of the loan the van secures would be treated as a general unsecured claim. Citing a provision added to § 1325(a) of the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,[2] Wells Fargo contends the Debtors must pay it the full amount of the debt, plus interest, because the loan was incurred less than 910 days before they filed for bankruptcy. Wells Fargo has also filed a motion for stay relief, contending that the Debtors do not need the van in order to perform their Chapter 13 plan, and that allowing them to retain

---

1. Some of the documents before the Court spell Ms. Lewis's first name with one "r" ("Loretta"), but it is spelled "Lorretta" on the bankruptcy petition, so that is the spelling the Court will use.

2. Pub.L. No. 109–8, 119 Stat 23 (enacted April 20, 2005, but mostly effective October 17, 2005).

and pay for it through their plan would be unfair to their unsecured creditors. After considering all the circumstances, the Court concludes that the debt on the van is not covered by the new BAPCPA provision, but that the portion of the Debtors' plan calling for them to pay Wells Fargo only the value of the van as a secured claim has not been proposed in good faith, so their plan cannot be confirmed. The Court further concludes that the Debtors have no equity in the van and it is not necessary for them to effectively reorganize, so Wells Fargo is entitled to stay relief authorizing it to enforce its lien against the van.

## FACTS

The parties stipulated to most of the facts and the Court has drawn others from various pleadings the Debtors have filed.

On November 9, 2004, Debtor Lorretta Lewis[3] bought a Honda Odyssey van. The van is titled in her name, and secures a lien held by Wells Fargo. Ms. Lewis bought the van for her adult daughter, who made the payments on the van until the Debtors filed for bankruptcy. The daughter is not a dependent of the Debtors and does not live with them, but she could not get a loan in her own name. Since the purchase, Ms. Lewis's daughter has possessed and used the van.

When the Debtors filed their Chapter 13 petition in January 2006, they initially reported that the van was in their possession and they claimed it as exempt. Recently, however, they amended their schedules to report that Ms. Lewis's daughter has the van, and to claim a different vehicle as exempt. They indicated the van was worth about $13,500. In their Chapter 13 plan, they proposed to treat Wells Fargo as a secured creditor to the extent of the van's value,[4] and an unsecured creditor to the extent its claim exceeded that amount. The total amount owed to Wells Fargo on the day the Debtors filed for bankruptcy was about $19,300, so they are proposing to treat $5,800 of the claim as unsecured.

Wells Fargo objected to the Debtors' plan, contending the new BAPCPA provision added to § 1325(a) prohibits splitting its claim into secured and unsecured parts, and requires the Debtors to pay its claim in full, with interest. In May, Wells Fargo moved for stay relief, alleging the Debtors do not need the van to perform their Chapter 13 plan, their daughter should be able to pay for the van as she was doing, and it is unfair for the Debtors to pay for the van to the detriment of their unsecured creditors. During a conference call, the parties agreed to submit their dispute on stipulated facts and briefs, which have now been filed. In one of its briefs, Wells Fargo added an assertion that the Debtors' plan does not meet the good faith requirement of § 1325(a)(3). The Debtors filed a separate brief responding to that assertion.

## DISCUSSION

a. *"Personal use of the debtor" under the hanging paragraph the BAPCPA added to § 1325(a).*

Section 1325(a)(5) of the Bankruptcy Code gives Chapter 13 debtors several options for treating secured claims in their plans. Wells Fargo has not accepted the plan and the Debtors are not proposing to surrender the van, so two of the options are not relevant in this case.[5] Instead, the

---

**3.** The loan was made to "Lorretta Ewing," but the parties agree Ms. Lewis is the person who took out the loan.

**4.** Their original plan stated the van's value was $15,500, but they amended it a few weeks later to reduce the value to the amount reported in their schedules.

**5.** *See* § 1325(a)(5)(A) & (C).

Debtors want to treat Wells Fargo's claim under § 1325(a)(5)(B). As relevant to the parties' dispute, § 1325(a)(5)(B) provides:

(a) [T]he court shall confirm a plan if—

. . .

(5) with respect to each allowed secured claim provided for by the plan—

. . .

(B)(i) the plan provides that—

. . .

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.[6]

In somewhat simplified terms, § 506(a) provides that an allowed claim is a secured claim to the extent of the value of the creditor's collateral, and together with § 1325(a)(5)(B), has long been interpreted to permit a Chapter 13 debtor to keep encumbered property by paying the secured creditor only the value of its collateral (plus interest), and to treat any balance he or she may owe the creditor as a general unsecured claim.[7] This is commonly known as the "cramdown" option,[8]

and the Debtors want to apply it to Wells Fargo's secured claim against the van.

Wells Fargo contends another provision that the BAPCPA inserted in § 1325(a) at the end of new subsection (9), commonly referred to as the "Hanging Paragraph,"[9] precludes the Debtors from treating its claim this way. As relevant here, the Hanging Paragraph provides:

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor.

When it applies, this provision clearly tries to affect the way Chapter 13 debtors can treat secured claims under § 1325(a)(5), although courts are already struggling to determine exactly how.[10] In this case, though, the question is whether the Hanging Paragraph applies to Wells Fargo's claim at all.

---

6. The BAPCPA made no substantive change to the wording of this portion of § 1325(a)(5)(B).

7. See Till v. SCS Credit Corp., 541 U.S. 465, 468, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004); Associates Commercial Corp. v. Rash, 520 U.S. 953, 955–57, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

8. But see 2 Honorable Keith Lundin, Chapter 13 Bankruptcy, § 101.1 at p. 101–1 and n. 2 (2000 and 2004 Supp.) (preferring phrase "smooth down" as more accurate description of cramdown in Chapter 13 cases); see id. at § 104.1 ("smoothdown" means secured creditor retains lien and debtor pays lienholder value of its collateral in installments, with interest, during life of plan).

9. The BAPCPA added subparagraphs (7), (8), and (9) to § 1325(a), and followed them with

the unnumbered Hanging Paragraph that deals with an entirely different subject than subparagraph (9) and so is clearly not intended to be part of it.

10. See, e.g., In re Lowder, 2006 WL 1794737 (Bankr.D.Kan. June 28, 2006) (Karlin, J.) (deciding debtor's use of vehicle was personal, not business, use, and creditor was entitled to post-confirmation interest; citing numerous cases deciding those or other questions under Hanging Paragraph); In re Wampler, 345 B.R. 730 (Bankr.D.Kan.2006) (Berger, J.) (discussing three views about Hanging Paragraph's affect on creditor's right to post-confirmation interest, and concluding creditor's claim must be paid in full, but without interest).

The Debtors contend the Hanging Paragraph does not apply because the van was not "acquired for the personal use of" either of them, but for the personal use of Ms. Lewis's adult daughter. Wells Fargo responds that the phrase "personal use of the debtor" requires the Court to distinguish between only business and non-business uses, and that the Hanging Paragraph applies so long as the vehicle is used for non-business purposes, without regard to who puts it to use. The Court believes the Debtors' proposed reading would give some meaning to the words "of the debtor," while Wells Fargo's suggested reading asks the Court to ignore those words and construe the Hanging Paragraph as if it said it applies to a vehicle "acquired for personal use" and said nothing about who must be the user. In statutory construction disputes, the Supreme Court has instructed the Court to prefer the Debtors' approach.[11]

The parties agree that, to date, only one published decision, *In re Jackson*,[12] has considered whether the Hanging Paragraph applies if the debtor does not use the vehicle in question. In that case, the court held the paragraph did not apply to a car the debtor had purchased for his wife (who had not filed for bankruptcy) to use and did not use himself, because the car had not been "acquired for the personal use of the debtor."[13] The court focused on the distinction between the phrase "personal use" in the new provision and the phrase "personal, family, or household" use that appears in other Bankruptcy Code provisions, and did not seem to rely on the fact the words "of the debtor" also appear in the relevant part of the Hanging Paragraph.[14] While this Court might consider the phrase "acquired for the personal use of the debtor" to be flexible enough to include a vehicle a debtor acquired for his or her spouse to use, and might therefore disagree with *Jackson's* holding in such a situation, the Court is convinced the phrase cannot reasonably be stretched to include a vehicle acquired for the use of an independent adult child who does not live with the debtor.

In short, the Court is convinced that the Hanging Paragraph does not apply to the van, and does not preclude the Debtors from cramming down Wells Fargo's claim as permitted under § 1325(a)(5)(B). This does not mean, however, that the Debtors' plan is confirmable.

*b.  Under the circumstances, the part of the Debtors' plan proposing the cramdown treatment of Wells Fargo's claim has not been proposed in good faith.*

■■■  In order to confirm the Debtors' plan, the Court must, under § 1325(a)(3), find that "the plan has been proposed in good faith." The Tenth Circuit most recently discussed this requirement in *Mason v. Young (In re Young)*,[15] saying:

> As a general matter, a determination of good faith must be made on a case by case basis, looking at the totality of the circumstances. *See Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 (10th Cir.1989). "In evaluating whether a debtor has filed in good faith, courts should be guided by the eleven factors set forth in *Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th

---

**11.** *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (courts should give effect, if possible, to every clause and word of statute).

**12.** 338 B.R. 923 (Bankr.M.D.Ga.2006).

**13.** 338 B.R. at 925–26.

**14.** *See id.*

**15.** 237 F.3d 1168 (10th Cir.2001).

Cir.1983), as well as any other relevant circumstances." *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir.1993) (footnote omitted). The eleven *Flygare* factors are:

> (1) the amount of proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

*Flygare*, 709 F.2d at 1347–48 (quoting *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)). But "the weight given each factor will necessarily vary with the facts and circumstances of each case." *Id.* at 1348.[16]

The BAPCPA did not amend § 1325(a)(3), so the Court believes *Young* and *Flygare* still direct the Court's consideration of the good faith of the Debtors' plan. Here, the most relevant circumstances are not any of those specifically identified in *Flygare*.

Before they filed for bankruptcy, the Debtors were neither using nor paying for the van. Their only connection to it was that Ms. Lewis used her ability to obtain credit to help her daughter buy the van. So far as their personal financial situation was concerned, they could simply have proposed in their Chapter 13 plan to surrender their interest in the van to Wells Fargo, and to treat any balance Ms. Lewis might owe on the debt as a general unsecured claim that would be discharged on completion of their plan. Instead, without suggesting they would take the van from the daughter and use it themselves, they proposed that they would start paying Wells Fargo for the van, splitting its claim into secured and unsecured portions, treating it as a secured creditor only to the extent of the value of the van, and discharging the rest of its claim. The only personal benefit the Debtors would receive from this proposal would be the satisfaction a parent can obtain by helping a child keep her vehicle. Unless the Debtors could obtain this satisfaction without using money that would otherwise go to their unsecured creditors, the Court is convinced their proposal does not meet the good faith test.

The Debtors seem to suggest their unsecured creditors will necessarily receive some kind of benefit if the Debtors are allowed to pay for the van because they have proposed a plan that must run for "60 months to amortize" (presumably meaning to provide enough money to pay the value of the van plus interest), even though their income is below the median for the state so they are only required to propose a 36–month plan. This must not be true. If the only reason the plan would have to run for 60 months, rather than the 36–month minimum, would be to pay the value of the van, the plan must not provide any distri-

---

16. *Young,* 237 F.3d at 1174–75.

bution for unsecured creditors. The Debtors then go on to say if they surrender the van and shorten their plan to 36 months, the remaining secured, administrative, and priority claims would amortize in about 30 months, meaning about six months of payments would be distributed to unsecured creditors. So surrendering their interest in the van and shortening the plan to 36 months would, under the Debtors' own argument, provide money for their unsecured creditors that the longer plan would not. The Court is convinced this shows their proposed treatment of the van does not meet the good faith test.

The Debtors also suggest Wells Fargo is arguing against its own interest because their plan will provide it the most money it can possibly recover on its claim. The Court is not inclined to assume that the Debtors know better than Wells Fargo does what would be best for it in this case. Furthermore, the Debtors overlook the fact that, in certain circumstances, Chapter 13 allows a debtor to prevent a secured creditor from enforcing its rights against collateral and make it wait for payment from the debtor, even though the creditor might prefer to recover what it can from the collateral now rather than wait for the possibility the debtor will pay it more over time. Even if it is true the Debtors' proposal would pay Wells Fargo more than it would otherwise recover, the Bankruptcy Code does not require Wells Fargo to accept its treatment under their plan.

Because the Debtors' proposal to pay the value of the van through their plan has not been made in good faith, their plan cannot be confirmed.

*c. Wells Fargo is entitled to stay relief.*

█ Wells Fargo has asked to be allowed to enforce its security interest in the van by repossessing and selling it. The Debtors respond that their plan provides adequate protection for Wells Fargo's interest in the van, and that Wells Fargo's remaining arguments constitute an unsecured creditor's objection to confirmation of their plan. Section 362(d)(2) provides that a bankruptcy court should grant relief from the § 362(a) stay of an act against property if: "(1) the debtor does not have an equity in the property; and (2) such property is not necessary to an effective reorganization." The Debtors' own pleadings make clear that the van is worth much less than is owed on the debt it secures and that they do not need the van in order to carry out a Chapter 13 plan of reorganization. Since the Court has concluded the Debtors' plan cannot be confirmed, the plan cannot serve to provide Wells Fargo with adequate protection. Consequently, the Court concludes Wells Fargo is entitled to relief from the automatic stay allowing it to enforce its security interest in the van, although it will not be allowed to proceed against either of the Debtors personally at this time.

## CONCLUSION

For these reasons, the Court concludes that: (1) the Hanging Paragraph added to § 1325(a) by the BAPCPA does not apply to the debt secured by the van; (2) the portion of the Debtors' plan calling for them to pay Wells Fargo the value of the van has not been proposed in good faith, so the plan cannot be confirmed; and (3) Wells Fargo is entitled to stay relief so that it may enforce its security interest in the van. The Debtors are hereby given 30 days from the entry of this opinion to amend their plan to correct the improper treatment of Wells Fargo's claim.