**In re Donald Marvin VAGI, Sr. and Jennifer Lynn Vagi, Debtors.**

**No. 06–40033.**

United States Bankruptcy Court, N.D. Ohio.

Sept. 26, 2006.

Robert A. Ciotola, Canfield, OH, for Debtors.

## MEMORANDUM OPINION

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on the Objection to Claim of Capital One Auto Finance Claim # 3 filed on behalf of Donald Marvin Vagi, Sr. ("Mr.Vagi") and Jennifer Lynn Vagi ("Mrs.Vagi") (collectively "Debtors") on May 9, 2006. A Response was filed on behalf of Capital One Auto Finance ("Creditor") on June 19, 2006.

On July 20, 2006, the Court conducted an evidentiary hearing. Debtors were present and represented by Robert A. Ciotola. Creditor was represented by Robert Bricker. The Court accepted the testimony of both debtors.

At the conclusion of the hearing, the Court instructed the parties to file simultaneous briefs on or before August 21, 2006. Debtors filed their brief on August 18, 2006. Creditor filed its brief on August 21, 2006.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

On January 24, 2006, Creditor filed a Proof of Claim secured by a 2005 Chevrolet Uplander V6 Extended Wagon 4D ("Minivan") in the amount of $23,122.91, with a contract interest rate of 14.95%.

In their Objection to Claim, Debtors contend that the secured claim should be reduced to $17,687.00, that is, the mid-book NADA value of the Minivan (January 2006 Edition), plus 8.5% interest, and that the balance of the claim should be treated as a general unsecured claim, pursuant to the "cram down" provisions in 11 U.S.C. § 506 and *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

In its Response, Creditor argues that an amendment to 11 U.S.C. § 1325 enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") prohibits a purchase-money security interest in a motor vehicle purchased within 910 days preceding the date of a petition from being crammed down pursuant 11 U.S.C. § 506.

The following facts are undisputed. Mr. Vagi purchased the Minivan on August 31, 2005. (*See* Ohio Certificate of Title attached to Proof of Claim # 3.) Approximately four and a half months later, on January 16, 2006, Debtors filed their joint Chapter 13 Petition.

According to Debtors' testimony, Mr. Vagi purchased the Minivan exclusively for Mrs. Vagi's use. Mrs. Vagi is a stay-at-home mom with three small children and the Minivan was purchased to transport them to school and various other activities. Mrs. Vagi also uses the Minivan to run errands and shop. On direct examination, both debtors testified that Mr. Vagi does not drive the Minivan although he is listed as an insured driver of the Minivan on their automobile insurance policy.[1]

Both debtors testified that Mr. Vagi's automobile, a 1997 Mercury Sable, is in poor condition. The passenger-side air bag is disconnected and there are not enough seat belts in the back seat to secure all three of the children at the same time. Because Debtors cannot transport all of their children at one time in Mr. Vagi's car, he uses it almost exclusively for driving to and from work.

On cross examination, Mr. Vagi testified that he "tr[ies] not to" drive at all when he is at home because his work requires that he drive 100 miles a day. However, he conceded that he is a passenger in the Minivan three or four days a week. Mr. Vagi testified that he purchased the Minivan because his credit rating is better than Mrs. Vagi's credit rating and that he makes the monthly payments.

Prior to the enactment of BAPCPA, purchase-money security interests in motor vehicles purchased within 910 days prior to the petition date were subject to the cram down provisions set forth in 11 U.S.C. § 506, which reads, in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so sub-

---

**1.** On cross examination, Mrs. Vagi admitted that Mr. Vagi drove the Minivan a few times to "run over to buy buns or eggs," while Mr. Vagi admitted that he drove it once when he first bought it.

ject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (West 2006). Consequently, pre-BAPCPA debtors could reduce a creditor's secured claim on a motor vehicle (no matter when purchased) to the actual value of collateral, with the remainder of the claim becoming a general unsecured debt.

Congress, in enacting BAPCPA, sought to carve out an exception to a debtor's ability to "cram down" secured debt for motor vehicles purchased within 30 months prior to the bankruptcy petition. The amendment to 11 U.S.C. § 1325 at issue reads, in pertinent part:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [period] preceding the date of the filing of the petition, and the *collateral for that debt consists of a motor vehicle* (as defined in section 30102 of title 49) *acquired for the personal use of the debtor* . . . .

11 U.S.C. § 1325 (West 2006) (Emphasis added). Because the amendment is not numbered and appears after paragraph (a)(9), despite the fact that it modifies paragraph (a)(5), numerous bankruptcy courts and commentators have referred to it as the "hanging paragraph." *In re Osborn*, 348 B.R. 500, 503–04 (Bankr. W.D.Mo.2006); *In re Lewis, infra, In re Osborn, infra.*

According to Debtors, because Mr. Vagi did not purchase the Minivan for his own personal use, but, rather, for Mrs. Vagi's personal use, Debtors may still take advantage of the cram down provisions in § 506. Although no bankruptcy court has addressed the precise issue before the Court, Debtors rely on the rationale articulated in *In re Jackson*, 338 B.R. 923 (Bankr.M.D.Ga.2006) to support their argument that the hanging paragraph is inapplicable to the facts in this case.

In *Jackson*, the debtor purchased a 2005 Grand Prix for his wife (a non-debtor), which was secured by a purchase-money security interest with Nissan Motor Acceptance Corp. within the 910 days prior to the filing of his bankruptcy petition. Nissan argued that the hanging paragraph applied to the Grand Prix because the phrase "personal use" in the statute was intended to distinguish motor vehicles acquired for personal use from motor vehicles acquired for business use. Consequently, Nissan argued that the phrase "personal use" in § 1325 included family or household use.

The *Jackson* Court rejected Nissan's argument based primarily upon the rule of statutory construction that "Congress acts intentionally and purposefully when it includes particular language in one section of statute but omits it in another." *Id.* at 926 (internal citations omitted). Because Congress used the phrase "personal, family or household purposes" in its entirety in a number of other sections of the Code, the Court concluded that Congress intended the phrase "personal use" to have a different meaning in § 1325. *Id.* at 926–27.

Ultimately, the *Jackson* Court premised its conclusion that the hanging paragraph was inapplicable to the facts in that case upon the dictionary definition of the word "personal." The Court wrote:

> "Personal" is defined as "[o]f or relating to a particular person; private." Ameri-

can Heritage Dictionary of the English Language (4th ed.2000). In this case, the vehicle must have been acquired for the use of a particular person-Debtor-for the hanging paragraph to apply. Nissan has conceded that the Gran Prix was purchased to replace Debtor's wife's previous car, that she has at all times been the primary driver of the Gran Prix, and that Debtor has primary use of a different vehicle. Because the Gran Prix was not acquired for Debtor's personal use, the hanging paragraph does not apply to Nissan's claim.

*Id.* at 926; *Accord In re Lewis,* 347 B.R. 769 (Bankr.D.Kan.) (debtor purchased automobile for adult daughter who could not get financing on her own).

Of course, Creditor argues that the facts in the instant case are wholly distinguishable from the foregoing cases because, unlike the wife in *Jackson* and the adult daughter in *Lewis,* Mrs. Vagi is a co-debtor. Debtors counter, however, that the Minivan must be for the personal use of the "acquiring debtor" for the hanging paragraph to apply.

Like the *Jackson* Court, this Court turns to rules of construction in order to resolve the disputed issue. 11 U.S.C. § 102(7), captioned "Rules of Construction," reads, in its entirety, "In this title— the singular includes the plural;...." 11 U.S.C. § 102 (West 2006). As a conse-quence, for the purposes of this case the relevant portion of the hanging paragraph may also be read, "acquired for the personal use of the debtors."

Turning to the facts in this case, Debtors concede that the Minivan was purchased for Mrs. Vagi's personal use. Therefore, regardless of whether this Court applies the strict construction of the phrase "personal use" adopted by the *Jackson* Court, or the more liberal construction advocated by Nissan in that case, the Minivan in this case was acquired for the personal use of one of the debtors.[2]

The specific public policy underlying Congress' decision to exempt only motor vehicles acquired for the "personal use of the debtor" from the cram down provisions in § 506 is not readily apparent. As a matter of fact, the legislative history of the hanging paragraph provides no insight into the "personal use" requirement. However, this Court's interpretation of the hanging paragraph is consistent with the overall goal of the 2005 amendments to discourage bankruptcy abuse.[3]

Having concluded that the hanging paragraph applies to motor vehicles purchased by a debtor for the personal use of his or her co-debtor, the Court must determine whether the hanging paragraph also supercedes the Supreme Court's holding in *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).[4]

---

2. The Court neither expressly adopts nor rejects the holding in *Jackson, supra.* Because Mrs. Vagi is a debtor, the Court need not reach the issue of whether the phrase "personal use" in the hanging paragraph is distinguishable from the phrase "personal, family, and household purposes" used in other parts of the Code.

3. The section of BAPCPA that added the hanging paragraph is captioned, "Section 306–Giving Secured Creditors Fair Treatment in Chapter 13 Restoring the Foundation for Secured Credit." Pub.L. No. 109–8, § 306(b)

(2005). H. Rep. 109–31, Pt.1 at 71–72, 109th Cong., lst Sess. (2005). The dearth of legislative history prompted at least one bankruptcy court to conclude that "the only clear intent discerned from the legislative history on the hanging paragraph is that Congress intended to provide more protection to creditors with purchase money security interests." *See In re Duke,* 345 B.R. 806, 809 (Bankr.W.D.Ky. 2006).

4. Neither Debtors nor Creditor briefed the interest rate issue.

■ With respect to secured claims, 11 U.S.C. § 1325(a)(5)(B)(ii) states that a Chapter 13 plan must provide the value, *as of the effective date of the plan,* of property to be distributed under the plan is "not less than the allowed amount of such claim." 11 U.S.C. § 1325 (West 2006). In *Till,* the Supreme Court expressly rejected the use of the contract rate of interest in the calculation of the present value requirement in a Chapter 13 plan. *Till,* 541 U.S. 465, 124 S.Ct. 1959, 158 L.Ed.2d 787 (2004). ("§ 1325(a)(5)(B) ... does not require that the terms of the cram down loan match the terms to which the debtor and creditor agreed prebankruptcy, nor does it require that the cram down terms make the creditor subjectively indifferent between present foreclosure and future payment.")

The Supreme Court opted instead for the "formula" approach, which adjusts the national prime rate upward to reflect the risk inherent in loaning money to the specific debtor:

> Taking its cue from ordinary lending practices, the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration

and feasibility of the reorganization plan.

*Id.* at 478–479, 124 S.Ct. at 1961.

Bankruptcy courts interpreting the hanging paragraph have uniformly held that *Till* still governs the determination of the interest rate required to ensure present value under 1325(a)(5)(B)(ii). *In re Fleming,* 339 B.R. 716 (Bankr.E.D.Mo. 2006); *In re Johnson,* 337 B.R. 269 (Bankr.M.D.N.C.2006); *In re Robinson,* 338 B.R. 70 (Bankr.W.D.Mo.2006); *In re Wright,* 338 B.R. 917 (Bankr.M.D.Ala. 2006); *In re Brown,* 339 B.R. 818 (Bankr. S.D.Ga.2006).

For instance, in *In re Fleming, supra,* the bankruptcy court for the Middle District of Alabama relied upon the plain language of the statute to conclude that the hanging paragraph was not an anti-modification provision. *Fleming,* 339 B.R. at 723. Ultimately, the *Fleming* Court premised its conclusion upon the same rule of construction invoked by the *Jackson* Court. The *Fleming* Court wrote:

> To the contrary, where Congress wanted to prohibit any modification in treatment of a secured creditor in a Chapter 13 plan it has done so. In Section 1322(b)(2) of the Bankruptcy Code, Congress expressly prohibits a debtor from modifying the rights of a creditor whose claim is secured only by a security interest in real property that is the debtor's principal residence. Had Congress wanted to provide such treatment to Car Creditors in BAPCPA, they could have done so by using the language they used to provide such treatment to home mortgagees. Congress did not.

*Id.*

Adopting the rationale provided in the wealth of case law on this subject, this Court agrees that the hanging paragraph does not contain the type of anti-modification language invoked by Congress with

respect to security interests in real property, and, as a consequence, *Till* prevents Creditor from recovering that portion of its claim premised upon the contract rate of interest.

Debtors argue that the annual interest rate of 8.5% is sufficient to provide adequate protection to Creditor under *Till*, while Creditor contends that an interest rate of 9.5% more accurately reflects the risk of extending credit to Debtors. The national prime rate was 7.25% on the date that Creditor filed its Proof of Claim.

Neither Debtors nor Creditor provided any rationale for their proposed interest rate. According to the Supreme Court in *Till*, because the formula approach "start[s] from a concededly *low* estimate and adjust[s] *upward*," the burden of proof rests on the creditor because it is "likely to have readier access to any information absent from the debtor's filing (such as evidence about the liquidity of the collateral market.)" *Till*, 541 U.S. at 479, 124 S.Ct. at 1961 (internal citations omitted).

As a consequence, Debtors' Objection to Claim is denied in part, with respect to the application of the hanging paragraph to the debt secured by the Minivan, and this matter is set for an evidentiary hearing on October 18, 2006 at 10:00 a.m. to determine the appropriate interest rate to be applied under *Till*.

An appropriate Order will follow.

### ORDER

For the reasons set forth in this Court's memorandum opinion entered on this date, the Objection to Claim of Capital One Auto Finance Claim # 3 filed on behalf of Debtors is overruled in part with respect to the application of 11 U.S.C. § 506 and sustained in part with respect to the applicability of *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). A further evidentiary hearing on the interest rate issue will be held on October 18, 2006 at 10:00 a.m.

**IT IS SO ORDERED.**