**In re Christopher Lee LaDEAUX, Holly Lyn LaDeaux, Debtor(s).**

No. 07–51004.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

July 26, 2007.

---

Robert Ellis, Marietta, OH, for Debtors.

## ORDER OVERRULING OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing on May 25, 2007 to consider confirmation of the Chapter 13 Plan (Doc. # 5) proposed by Christopher Lee LaDeaux and Holly Lyn LaDeaux (collectively, "Debtors," or "Mr. LaDeaux" and "Mrs. LaDeaux"), and the Objection thereto (Doc. # 26) interposed

by Regional Acceptance Corporation ("Regional"). Present at the hearing were counsel for the Debtors Robert Ellis, the Debtors, and counsel for Regional Christopher A. Conley. The Debtors' Plan proposes to pay Regional the value of its collateral, plus interest, over the life of the Plan. Regional objects on the basis that its claim is not subject to such treatment by virtue of § 1325(a), inasmuch as the collateral, a vehicle, was purchased within 910 days prior to commencement of this case.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the general Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L).

Based upon arguments presented and evidence adduced at the hearing, the Court finds and concludes as follows:

The Debtors are married and with their son, have a household of three. About five years ago, they began caring for foster children. While there are times that there are no foster children in their home, they usually have at least one under their care, and often have more than one. As of the hearing date, they had one foster child in their household, and were expecting two more in the near future. The Debtors receive the sum of twenty dollars ($20) per day for each child in their care.

In order to transport the foster children to appointments for medical attention, counseling and other needs, the Debtors purchased a 2004 Toyota Matrix on July 19, 2006. Although they had a vehicle at the time, a 1992 Geo Prism, they needed a larger vehicle in order to accommodate the needs of the foster children. The Toyota is more spacious than the Prism. But for the foster children, the Debtors would not have purchased it. The Debtors financed the purchase of the Toyota, granting a purchase money security interest to the seller. The transaction is evidenced by a signed Retail Installment Contract (the "Contract"), which was prepared by the seller and which was immediately assigned to Regional. Among the many other details, the Contract indicated that the vehicle was primarily for personal use. At the time of purchase, Mr. LaDeaux had described the intended use of the Toyota to the salesperson: transporting foster children. She advised him that transport of foster children does not constitute commercial use.

On rare occasions, the Toyota is used by Mrs. LaDeaux to travel to and from work, but generally, the Debtors commute to and from work together in the Prism. Although the Debtors have one child, he is eighteen years of age and has a truck that he purchased for his transportation needs. When the Debtors do not have any foster children under their care, they seldom use the Toyota.

The Debtors filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on February 16, 2007, within 910 days from the date of the purchase of the Toyota. According to the Debtors' Schedules, the Toyota is now worth $10,000.00. Regional has filed a Proof of Claim indicating a balance due of $18,243.30.

The Debtors assert that the vehicle was acquired and is being used for business. Pursuant to §§ 506, 1322(b)(2) and 1325(a)(5) of the Bankruptcy Code, the Debtors propose to pay the secured portion of Regional's claim, i.e., $10,000, plus interest, over the life of the Plan, with the remaining balance to be paid as an unsecured claim. According to the Debtors, based on the business use of the Toyota, Regional's claim is not subject to the special provisions set forth in § 1325(a) for vehicles purchased within 910 days of commencement of the bankruptcy case. Regional objects to this treatment, claiming

that the vehicle is primarily used for the personal benefit of the Debtors, and therefore, is subject to the limitations on modification of certain secured claims articulated in § 1325(a).

Typically, a secured claim may be treated in a chapter 13 plan in one of three ways: (1) the debtor may surrender the collateral, (2) the debtor may pay the allowed secured claim, as determined pursuant to § 506, plus interest, or (3) the claim may be treated in such manner to which the secured creditor agrees. 11 U.S.C. § 1325(a)(5). However, the final sentence of § 1325(a), which was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA"), places limitations on the options for treatment of secured claims under § 1325(a)(5). This provision is inserted after § 1325(a)(9), a provision not otherwise relevant to the matter under consideration.[1] Given its awkward placement and lacking any identifying number or letter, the sentence has been termed by many as the "hanging paragraph;" it provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is subject of the claim, the debt was incurred within the 910-day [period][2] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor. . . .

11 U.S.C. § 1325(a) "hanging paragraph".

■ It is uniformly accepted that the debtor's intended use **at the time the vehicle was purchased** should be examined to determine whether the "hanging paragraph" applies to a particular secured claim. *In re Lorenz,* 368 B.R. 476, 480 (Bankr.E.D.Va.2007) (citing *In re Phillips,* 362 B.R. 284, 302 (Bankr.E.D.Va.2007); *In re Solis,* 356 B.R. 398, 408–09 (Bankr. S.D.Tex.2006)); *In re Hill,* 352 B.R. 69, 73 (Bankr.W.D.La.2006). Personal use is one of the lynchpins that determines applicability of the "hanging paragraph."

■ The debtor's actual usage of the vehicle in question is persuasive evidence of the debtor's actual intent at the time of acquisition. Some courts have determined applicability of the "hanging paragraph" by the predominant use of the vehicle, weighing how much a debtor uses the vehicle for personal benefit versus business purposes. If there is a substantial and material amount of personal use by a debtor, courts have held the vehicle is subject to the limitations of the "hanging paragraph" of § 1325(a). *In re Lorenz,* 368 B.R. 476, 482 (Bankr.E.D. Va.2007) (although the debtor also used the vehicle for business purposes, he used the vehicle to meet his personal needs in a material and significant way); *In re Wilson,* 2006 Bankr.LEXIS 3325 (Bankr.D.Kan. Dec. 6, 2006). However, this Court need not analyze the propriety of this approach today because there is no question that the vehicle was acquired solely for the care of foster children. The question then becomes whether foster care constitutes business or personal use.

The Bankruptcy Code does not define the term "personal use." Some courts

---

1. Section 1325(a)(9) requires a debtor to file all applicable federal, state and local tax returns for the previous four years before a plan can be confirmed.

2. The Court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

have attempted to define what constitutes business use and what constitutes personal use. In *In re Hill*, the court held that usage is for business purpose if it enables a debtor to make a significant contribution to the family income. *In re Hill*, 352 B.R. at 73. The court found that the vehicle was acquired to transport the debtor to and from work, enabling the debtor to create family income; thus, when analyzing the totality of the circumstances, the court found the vehicle was not acquired for the personal use of the debtor. *Hill*, 352 B.R. at 73.

Requiring a bit more, the court in *In re Joseph* held that in order to establish that a vehicle is used for a business purpose, a debtor must show that the vehicle is used to perform the functions of a business or a trade. *In re Joseph*, 2007 WL 950267, *3, 2007 Bankr.LEXIS 1049, at *11 (Bankr. W.D.La., Mar. 20, 2007). The court concluded there are many factors that are relevant to this determination, including:

> the nature of the debtor's work, how the debtor's vehicle is used to perform the debtor's job duties, whether or not the debtor's employer requires the debtor to use his or her vehicle to perform the debtor's job-related duties, whether the debtor's employer reimburses the debtor for mileage, and whether or not the debtor claims any vehicle-related expenses as business expenses on the debtor's tax returns.

*Joseph*, 2007 WL 950267, *3, 2007 Bankr.LEXIS 1049, at *11.

The *Joseph* court also found the retail installment contract should be considered because it typically indicates whether a debtor is acquiring the vehicle for business or personal use. *Joseph*, 2007 WL 950267, *3, 2007 Bankr.LEXIS 1049, at *11. The court concluded "if the debtor's contract indicates that the debtor acquired the vehicle for personal use, this factor will weigh heavily in favor of a finding that the vehicle was acquired for personal use." *Joseph*, 2007 WL 950267, *3, 2007 Bankr.LEXIS 1049, at *12. However, the court found this "fact alone is not dispositive and will be considered in light of the totality of circumstances." *Joseph*, 2007 WL 950267, *3, 2007 Bankr.LEXIS 1049, at *12. The court also observed that "personal . . . use is a use that 'benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral.'" *Joseph*, 2007 WL 950267, *2, 2007 Bankr.LEXIS 1049, at *7–8 (citing *In re Solis*, 356 B.R. 398, 410 (Bankr.S.D.Tex. 2006)).

In the instant case, the vehicle enables the Debtors to make a significant contribution to their income. Although the Debtors did not itemize their foster care income separately on Schedule J, the Debtors almost always have under their care one foster child, and often more, for which they receive income of twenty ($20) dollars a day per child. This amounts to earnings of approximately six hundred dollars or more in the average month, or about twenty percent of the Debtors' total monthly income. Because the Debtors acquired the vehicle solely to care for the foster children, the vehicle enables the Debtors to create twenty percent of their income. This is a significant contribution.

The Court also finds the vehicle was acquired for business use because the vehicle is used to perform the functions of a business, foster care. Although it may seem cold-hearted to characterize foster care as a business, it is, nonetheless, in the nature of a business. While much like caring for one's own children, it is more

akin to a day-care business or working as a nanny, but with greater responsibility. If the Debtors were in fact running an extended day-care operation or working as a nanny, one would be hard pressed to seriously assert that it did not constitute a business. The vehicle allows the Debtors to care for the foster children by transporting the children to appointments for medical attention, counseling and other needs. Thus, the vehicle enables the Debtors to meet the needs of the foster children and therefore perform the necessary functions and duties of foster care.

█ Finally, there is no evidence that the Toyota is used for any of the purposes that are the hallmarks of personal usage described by the court in *Joseph*. Although the Contract signed by the Debtors indicated the vehicle was for personal use, this fact alone is not dispositive: the Contract was prepared by the seller of the Toyota in spite of the Mr. LaDeaux's explanation regarding its intended use, and therefore the Contract cannot be construed against him. When the totality of the circumstances are examined, the Court concludes the vehicle was acquired for business purposes.

Therefore, because the vehicle was acquired solely for the use of the foster children, the vehicle was acquired for business use and not for personal use as required by the statute. Thus, the vehicle is not subject to the "hanging paragraph" of § 1325(a), and Regional's claim may be treated consistent with § 1325(a)(5). Accordingly, it is

**ORDERED AND ADJUDGED** that the Regional's Objection to confirmation of the Debtors' Chapter 13 plan (Doc. # 26) is overruled.

**IT IS SO ORDERED.**