**In re Gregory Wayne CROSS, Debtor.**

No. 07–52605.

United States Bankruptcy Court,
S.D. Ohio, Eastern Division,
at Columbus.

Sept. 27, 2007.

Yvonne M. Watson, Marysville, OH, for Debtor.

Waymon B. McLeskey II, Columbus, OH, for Creditor.

## OPINION AND ORDER SUSTAINING CAPITAL ONE AUTO FINANCE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

Capital One Auto Finance ("Capital One") has filed an objection to confirmation ("Objection") of the Debtor's Chapter 13 plan ("Plan"), arguing that the Plan's proposed treatment of its secured claim violates the requirements imposed by the so-called hanging paragraph of 11 U.S.C. § 1325(a).[1] The issue presented is whether a 2006 Cadillac CTS sedan ("Cadillac") purchased by the Debtor within 910 days of the filing of his bankruptcy petition is "a motor vehicle acquired for the personal use of the debtor" for purposes of the hanging paragraph contained in § 1325(a). The Debtor asserts that the automobile was purchased for the use of his wife, who is not a joint debtor in this case, and that the hanging paragraph does not, therefore, govern the treatment of Capital One's claim. He proposes to pay Capital One $22,525 on the secured portion of its claim and to pay the balance at the unsecured dividend rate of 30%. Capital One maintains that the Cadillac was purchased for the Debtor's personal use and thus argues that the Debtor may not bifurcate its claim into secured and unsecured portions, but must instead provide for payment of the entire amount owed—$34,094.61—as a secured claim.

For the reasons explained below, the Court concludes that the Cadillac was acquired for the personal use of the Debtor. Because the hanging paragraph's restriction on cramdown applies in this case, Capital One's Objection will be sustained.

### I. Jurisdiction

The Court has jurisdiction to hear and determine this contested matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

---

1. Capital One filed the Objection (Doc. 78) on August 21, 2007 in response to the Debtor's Fifth Amended Chapter 13 plan ("Plan") (Doc. 76), which was filed on August 13, 2007. On June 19, 2007, a hearing ("Hearing") was held on Capital One's objection to a prior version of the Plan (Doc. 39). The Objection, in substance, is identical to the previous objection filed by Capital One.

## II. Factual and Procedural Background

The Debtor, Gregory Wayne Cross, filed a voluntary Chapter 13 petition on April 11, 2007 ("Petition Date"). On his Schedule D—Creditors Holding Secured Claims, he lists Capital One as holding a purchase-money security interest in the Cadillac. The value of the Cadillac is listed at $22,525, and the claim amount is stated as $32,379. According to Schedule D, the Cadillac was purchased on February 24, 2006. On April 23, 2007, the Debtor filed his first Chapter 13 plan (Doc. 11). He subsequently filed four amended plans (Docs. 22, 35, 62 and 76). The current Plan, filed on August 13, 2007, provides for pre-confirmation adequate protection payments to Capital One in the amount of $392.26 per month, with monthly post-confirmation payments of $757.48. The Plan further provides that the collateral securing Capital One's claim will be valued pursuant to § 506, "with valuation determined in accordance with Local Rules, unless otherwise stipulated" and states that the Cadillac was "not acquired for the personal use of the debtor. . . . Vehicle acquired for the personal use of the debtor's spouse." Plan at 3. In addition to this Plan provision, the Debtor filed an objection to Capital One's claim (Doc. 46), in which he asserts that because the automobile was acquired for the personal use of his wife, the secured portion of Capital One's claim should be limited to $22,525.

In both the Objection to confirmation of the Plan and the response to the Debtor's objection to its claim, Capital One merely states that the issue of whether the Cadillac is for the personal use of the Debtor "is under investigation." The Court conducted the Hearing on the Objection and received testimony from both the Debtor and his wife. The facts set forth below were established by the testimony of the Debtor and Mrs. Cross.

The Debtor testified that he purchased the Cadillac in February 2006. At that time, he was serving as an Army reservist and was stationed at Camp Atterbury, Indiana. During his deployment, the Debtor did not have an automobile with him on base, but owned a motorcycle and three automobiles—an Audi, a Chevrolet Camaro and a Ford Excursion—all of which were kept at the couple's home in Marysville, Ohio. The Debtor bought the Camaro for his wife to use while he was gone, the Excursion was the "family truck," and the Audi was his wife's "back-and-forth" car. Mrs. Cross drove from their home in Marysville to visit the Debtor in Indiana and, during that visit, the Audi broke down. According to the Debtor, he and his wife went to a dealership close to the military base and purchased the Cadillac for Mrs. Cross so that she would have transportation to return to Ohio. This explanation strained credulity given the fact that the Crosses had two cars remaining in Marysville and the return trip from Indiana to Ohio is approximately 200 miles. It would appear that a rental car, rather than the purchase of a late-model Cadillac, would have served the purpose of providing transportation from the Army base in Indiana back to the Cross's home in Marysville.

The loan for the Cadillac was taken out solely in the Debtor's name, although both names are listed on the vehicle's title. Both parties are insured to drive the Cadillac, although Mrs. Cross testified that she pays for the insurance. The Debtor now uses the Camaro to drive to and from his job at the Honda manufacturing plant in Marysville, while Mrs. Cross uses the Cadillac to drive to work, transport their children to activities, and run errands. The

Debtor and his wife have six children, four of whom currently live at home.

Mrs. Cross testified that it was decided she would drive the Cadillac rather than the Camaro because she had difficulty keeping the Camaro on the road in the winter. The Debtor and his wife testified that they both use the Cadillac as their family vehicle on weekends.

On the basis of this slim evidentiary record, the parties seek a ruling from the Court on the question of whether the Cadillac was "acquired for the personal use of the Debtor" and is thus subject to the provision found in the hanging paragraph that excepts motor vehicles purchased within 910 days of a bankruptcy filing from valuation and cramdown under §§ 506 and 1325(a)(5)(B) of the Bankruptcy Code.[2]

### III. Legal Analysis

When it enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress amended § 1325(a) of the Bankruptcy Code, in part, by adding what has become known as the hanging paragraph. The language added to § 1325(a), following § 1325(a)(9), has been referred to as the hanging paragraph because it follows numbered subsections, but has no numerical designation of its own. *See In re Trejos*, 352 B.R. 249, 253 (Bankr.D.Nev.2006) ("Because of its odd placement in the statute as enacted, this text has no clear home in Section 1325(a), and thus has been referred to as the 'hang-

ing paragraph[ ] ....' " (footnote omitted)); *In re Payne*, 347 B.R. 278, 280 (Bankr.S.D.Ohio 2006) ("Given its awkward placement and lacking any identifying number or letter, the sentence [following § 1325(a)(9)] has been termed by many as the 'hanging paragraph.' "); *In re Sparks*, 346 B.R. 767, 769 (Bankr.S.D.Ohio 2006) ("[The] paragraph following § 1325(a)(9) ... has become known as the 'hanging paragraph' of § 1325(a)."), *aff'd, Sparks v. HSBC Auto Fin.*, 2007 WL 2080289 (S.D.Ohio July 18, 2007). This paragraph provides, among other things, that "section 506 shall not apply to a claim ... if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle ... acquired for the personal use of the debtor...." 11 U.S.C. § 1325(a).

Here, Capital One, as " 'the objecting party[,] must meet the initial burden of producing evidence in support of [its] objection[.] [T]he [D]ebtor bears the ultimate burden of persuasion on the issue of compliance with the confirmation criteria contained in § 1325(a).' " *In re Henry*, 328 B.R. 529, 538 (Bankr.S.D.Ohio 2004) (quoting *In re Carver*, 110 B.R. 305, 311 (Bankr. S.D.Ohio 1990)). Thus, the Debtor has

---

**2.** "Although the Bankruptcy Code nowhere uses the words 'cram down,' the term has come to denote the confirmation of a plan over the objection of a secured creditor." *Household Auto. Fin. Corp. v. Burden (In re Kidd)*, 315 F.3d 671, 675 (6th Cir.2003). *See Wells Fargo Bank Nw., N.A. v. Yett (In re Yett)*, 306 B.R. 287, 290–91 (B.A.P. 9th Cir.2004) (" 'Cramdown' and 'cram down' are bankruptcy terms of art which do not appear in the Bankruptcy Code: they refer to the modification of the rights of a secured creditor over its objection."). "Under the cram down

option [of § 1325(a)(5)(B)], the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral. The value of the allowed secured claim is governed by § 506(a) of the Code." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) (citations omitted).

"the burden to show that the [P]lan does not violate the terms of the hanging paragraph." *In re Fletcher*, 2007 WL 1804931 at *2 (Bankr.S.D.Fla. June 19, 2007).

■ In this case, there is no dispute that the collateral securing the Debtor's obligation to Capital One is a motor vehicle, that Capital One has a purchase-money security interest securing its debt, and that the debt was incurred within 910 days of the filing of the bankruptcy petition. The only issue before the Court is whether the Cadillac was "acquired for the personal use of the debtor." If so, then the Debtor must pay Capital One's claim in full and may not utilize the cramdown option afforded by § 1325(a)(5)(B).

The Court's research reveals a significant number of reported decisions construing the phrase "acquired for the personal use of the debtor." *See In re Solis*, 356 B.R. 398, 406–08 (Bankr.S.D.Tex.2006), for a thorough discussion of the caselaw attempting to interpret the "confusing ... statutory language" added to § 1325(a) by BAPCPA. *Id.* at 408. *Solis* collects and discusses the conflicting decisions arising from courts' efforts "to achieve a reasonable interpretation" of the phrase "acquired for the personal use of the debtor" found in the hanging paragraph. *Id.*

Many of the reported cases deal with the question of whether the vehicle was acquired for business rather than personal use. *See, e.g., In re LaDeaux*, 373 B.R. 48, 50 (Bankr.S.D.Ohio 2007) (holding that vehicle was not acquired for the personal use of the debtors where it was purchased "solely to care for ... foster children ... [which] enable[d] the Debtors to create

twenty percent of their income"); *In re Garrison*, 2007 WL 1589554 at *2 (Bankr.D.Alaska June 1, 2007) ("Given the substantial business use for the vehicle, [which was utilized for the debtor's newspaper and mail delivery business,] I conclude that the hanging paragraph doesn't apply to this debtor."); *In re Lowder*, 2006 WL 1794737 at *4 (Bankr.D.Kan. June 28, 2006) ("[W]hen a vehicle is not used within the scope of employment and the vehicle is acquired for the joint purpose of traveling to and from work and for conducting a debtor's private affairs, it is properly classified as 'personal use' for purposes of the Bankruptcy Code."). This issue is not before the Court in the present case. Rather, the question before the Court here—which also has spawned a number of decisions—is whether an automobile acquired for the use of a debtor's spouse may constitute a vehicle "acquired for the personal use of the debtor" so as to trigger the hanging paragraph's prohibition against cramdown.

Among the cases that deal with automobiles purchased by a debtor for his spouse is *In re Vagi*, 351 B.R. 881 (Bankr. N.D.Ohio 2006). In *Vagi*, the court did not permit a cramdown of the creditor's claim even though the evidence established that the minivan acquired by the debtor husband was used only by his wife, who was a joint debtor. The court found that under the rules of statutory construction, the singular word "debtor" includes the plural "debtors," and thus for purposes of the statute, the car was acquired for the personal use of both debtors. *Id.* at 885.

Applying a different rule of statutory construction—the "plain meaning" rule [3]—

---

**3.** "[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Cami-*

*netti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). *See also In re Sorrell*, 359 B.R. 167, 173–76 (Bankr. S.D.Ohio 2007) (discussing the "plain mean-

the courts in *In re Press*, 2006 WL 2734335 at *2–3 (Bankr.S.D.Fla. July 26, 2006) and *In re Jackson*, 338 B.R. 923, 925–926 (Bankr.M.D.Ga.2006), held that cramdown was permitted where a debtor husband acquired a car for the use of his non-filing spouse. The *Press* and *Jackson* courts found that the word "personal" is defined as " '[o]f or relating to a particular person; private[.]' " *Press*, 2006 WL 2734335 at *3 (alteration in original) (quoting *American Heritage Dictionary of English Language* (4th ed.2000)); *Jackson*, 338 B.R. at 926 (same). Thus, the courts in *Press* and *Jackson* reasoned, the phrase "personal use of the debtor" contained in the hanging paragraph should not be interpreted broadly so that it is given the same meaning as the phrase "personal, family or household use," which is used in various other sections of the Bankruptcy Code. *Press*, 2006 WL 2734335 at *3 ("Since the applicable rules of statutory construction require this Court to interpret 'personal use' as something different from 'personal, family or household use,' the Court concludes that the words 'personal use' are more limiting."); *Jackson*, 338 B.R. at 926 ("[W]hen Congress wants to include family or household use within the scope of the statute, it knows how to do so." (citing 11 U.S.C. §§ 101(8), 365(d)(5), 506(a)(2), 507(a)(7) and 522)). Concluding that the vehicles in question were acquired for the personal use of the debtor's spouse rather than the debtor, the *Press* and *Jackson* and courts found that the hanging paragraph's prohibition against cramdown was

inapplicable. *Press*, 2006 WL 2734335 at *3 ("Under the plain meaning of the hanging paragraph, once the car was acquired for the personal use of [the joint debtor wife], incidental or even frequent use by the [joint debtor husband] is not a consideration under the plain meaning of the statute."); *Jackson*, 338 B.R. at 926 (holding that the hanging paragraph did not apply where the creditor had "conceded that the [vehicle] was purchased to replace Debtor's wife's previous car, that she has at all times been the primary driver of the [vehicle], and that Debtor has the primary use of a different vehicle" (footnote omitted)).

Also allowing cramdown were the courts in *In re Adaway*, 367 B.R. 571, 574–76 (Bankr.E.D.Tex.2007) (applying "significant-and-material" personal-use test articulated by the *Solis* court, which is discussed *infra*, the court permitted bifurcation of claim where the debtor established he had acquired car for exclusive use of his wife while he was working offshore for extended periods of time), and *In re Smith*, 2007 WL 1577668 at *2–3 (Bankr.S.D.Tex. May 29, 2007) (applying "totality-of-the-circumstances" test and permitting cramdown where vehicle was purchased by debtor husband for his non-debtor wife's sole use and the evidence showed that "[a]lthough the Smiths are married, they do not share their vehicles or their finances in the manner that is typical for most American couples.").[4]

---

ing" principle of statutory interpretation and the exceptions to this rule).

4. The *Smith* court's observation that the debtor and his wife's arrangement regarding the use of family vehicles and finances was unlike that of the typical American married couple was based on the following factual findings:

> Mrs. Smith chose the vehicle, makes payments on the vehicle out [of] her separate

account, and exclusively uses the vehicle for her work transportation and personal needs. Mr. Smith does not have [a] key to the vehicle and never drives the vehicle. Likewise, Mrs. Smith does not have access to a key to Mr. Smith's vehicle and has never ridden in his vehicle. These facts are unusual in that rarely will a court be confronted with testimony which so clearly shows the non-debtor spouse is solely re-

A review of the foregoing decisions makes it clear that each case is fact-specific and the courts' rulings are necessarily fact-driven. Application of the personal-use test to each Chapter 13 debtor's unique family situation will inevitably involve consideration of myriad different factual permutations. In undertaking this task in the present case, the Court is guided by, and adopts, the rationale of the *Solis* decision, which formulates a test that is "more straightforward, better defined, and easier to apply" than the approaches taken in other cases. *Fletcher*, 2007 WL 1804931 at *4 (relying on the personal-use test set forth in *Solis*).[5] The "significant-and-material" test outlined in *Solis* requires a debtor to meet the burden of showing that he did not acquire the car for significant and material personal uses. The *Solis* court set forth the following checklist used to determine whether the hanging paragraph applies to a claim secured by a motor vehicle:

> (1) the claim is secured by a purchase money security interest, (2) the debt was incurred within 910 days prior to the filing of the bankruptcy case, (3) the collateral is a motor vehicle, and (4) at the time of the acquisition the acquirer intended that a significant, material portion of the use of the vehicle would be (a) for the benefit of the debtor(s) in the bankruptcy case, (b) for non-business purposes, and (c) for satisfaction of debtor(s)' wants, needs, or obligations. In reaching conclusions as to what is significant and material, the Court must take into consideration all of the facts and circumstances of the case.

*Solis*, 356 B.R. at 411. The Solis court also concluded that personal use would encompass "any use of the vehicle that benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations[,], ... and transportation to and from work in almost all circumstances...." *Id.* at 410 (footnote omitted).

Applying the *Solis* test to the very limited evidentiary record made at the Hearing, the Court concludes that the Cadillac was acquired for the personal use

---

responsible for and in control and care of the questioned vehicle.
*Smith*, 2007 WL 1577668 at *4.

5. In *In re Grimme*, 371 B.R. 814 (Bankr. S.D.Ohio 2007), Judge Aug considered and rejected the personal-use test formulated by the *Solis* court, choosing instead to adopt the test enunciated by the court in *Lowder*, reasoning:

> The "personal use" element of the hanging paragraph has spawned a surprisingly large volume of cases setting forth various legal tests to be used when performing this relatively straightforward analysis. The application of these complicated legal tests is burdensome, requires extensive testimony, and has resulted in the unnecessary splitting of hairs with some surprising results. [W]e believe, as did the Court in *In re Lowder*, 2006 WL 1794737 (Bankr.D.Kan. 2006), that the term "personal use" means, simply non-business use. With this as the threshold analysis, the "personal use" test is simple. When the evidence shows that a vehicle has been acquired for business purposes, the hanging paragraph will not apply. Conversely, if the evidence shows that a vehicle was acquired for non-business purposes, the hanging paragraph will apply.

*Id.* at 816 (citations and footnote omitted). Under this formulation of the personal-use test, which concededly provides a more bright-line standard than Solis's "significant-and-material" test, the hanging paragraph's prohibition against cramdown would be triggered and the Debtor would be precluded from bifurcating Capital One's claim because he did not acquire the Cadillac for business purposes.

of the Debtor. As *Solis* and the other reported decisions make clear, in applying the personal-use test it is "the intention of the acquirer at the date of acquisition[ ]" that is controlling. *Id.* at 408. Here, the only testimony regarding the Debtor's intent as of the date he acquired the Cadillac was his statement that the vehicle was acquired in order to provide Mrs. Cross with transportation from the Army base back to their home in Marysville. As noted above, however, the Court finds this explanation utterly incredible. Courts faced with "lax evidentiary presentations" often are required to "judg[e] credibility of testimony about 'intended use' by observing 'actual use.'" *Id.* at 409; *LaDeaux,* 373 B.R. 48, 2007 WL 2163088 at *3 ("The debtor's actual usage of the vehicle in question is persuasive evidence of the debtor's actual intent at the time of acquisition."). There is no question that at the time he purchased the Cadillac, the Debtor was not using the vehicle due to his military deployment. Nevertheless, the evidence adduced at the Hearing simply fails to persuade the Court that, at the time the Cadillac was acquired, it was not anticipated that the Debtor's use of the vehicle would be significant and material. The testimony received at the Hearing makes it clear that both the Debtor and Mrs. Cross use the Cadillac as their family vehicle on weekends. In fact, the Cadillac is the only vehicle owned by the Crosses that is large enough to accommodate their entire family.[6] The story that unfolded from the testimony at the Hearing was that of a typical family with multiple vehicles used by both husband and wife interchangeably as necessary and practical under the circumstances. Thus, under the *Solis* analysis, the Court concludes that the Debtor intended as of the date he acquired the

Cadillac to utilize the vehicle to "satisf[y] personal wants (such as recreation), ... personal needs (such as shopping or seeking medical attention or other errands), and ... family and other personal obligations...." *Solis,* 356 B.R. at 410.

In short, the evidence adduced at the Hearing makes it clear that the Cadillac was acquired with "the intent of providing personal benefits for the [D]ebtor[ ]." *Id.* (footnote omitted). Accordingly, the Debtor may not bifurcate the claim of Capital One.

### IV. Conclusion

For the foregoing reasons Capital One's Objection is hereby **SUSTAINED.**

**IT IS SO ORDERED.**

---

6. Although the record is silent as to the precise date, the Ford Excursion was repossessed sometime prior to the Petition Date.