**In re Thomas William EPPERS and Patricia Kirkpatrick Eppers, Debtors.**

**Bankruptcy No. 13–83–00098 R R.**

United States Bankruptcy Court,
D. New Mexico.

April 9, 1984.

Daniel J. Behles, Albuquerque, N.M., for debtors.

E. Ray Phelps, Roswell, N.M., for First Interstate Bank.

Gary B. Ottinger, Albuquerque, N.M., Trustee.

MEMORANDUM OPINION

STEWART ROSE, Bankruptcy Judge.

This is the second time the Debtors have submitted a Chapter 13 Plan to this Court

for confirmation, and the second time the First Interstate Bank of Roswell has vigorously objected to its confirmation.

The Debtors filed a petition for relief under Chapter 13 January 26, 1983. For approximately one year prior, Mr. Eppers had been involved in livestock operations, running cattle on his father's ranch near Roswell. These operations were financed by the First Interstate Bank. In theory Mr. Eppers would select cattle at the Roswell Livestock Auction Company, tell his loan officer what the cattle cost, and receive a loan for the purchase price. The Bank would retain a security interest in the cattle. Mr. Eppers took out five such loans. His loan officer at the Bank was W.A. Snipes, a neighboring land owner. Mr. Snipes had known Mr. Eppers since Eppers was a child, and had at various times employed Mr. Eppers. He considered Mr. Eppers a good worker.

Unfortunately for all concerned, Mr. Eppers, then in his mid-twenties, did not in fact use the funds thus obtained for the purchase of cattle. Instead, the Bank's money financed a fling. Eppers bought several motorcycles, traveled, and generally dissipated the $34,500 he had received in high living. Only about $1800 was ever paid back, and the balance remains as the Eppers' principal debt.

After the loans became delinquent, the Bank, in late June, 1982, dispatched its agricultural inspector out to appraise its security. Mr. Eppers displayed cattle, some branded with his brand, and some with his father's brand, all of which he alleged to be the Bank's collateral. The inspector, now deceased, assigned a value in excess of $40,000 to the livestock. Eppers sold some cattle and paid the proceeds to the Bank, fending off the Bank temporarily, but the lack of collateral was eventually discovered. The Debtors' petition followed.

The Debtors' first plan came on for confirmation May 12, 1983. This plan called for payments of $300 per month over 36 months, an approximate 16% return. The Plan Analysis indicated there would be no dividend in a Chapter 7 proceeding.

The Bank, owed two-thirds of the total debt, objected to confirmation, alleging the plan was not proposed in good faith, because among other things, the debt would be non-dischargeable in Chapter 7, the plan period was too short, and the plan did not account for the possibility of a large bequest or inheritance from Mr. Eppers' father some time during the plan period. The Debtors and the Bank could not settle their differences at the hearing. This Court denied confirmation, finding that there was an insufficient showing of good faith. The Debtors' Motion for Rehearing was denied, and on appeal, the denial of confirmation was upheld by the District Court.

On January 20, 1984, the Eppers filed a second plan, the subject of this opinion. This plan calls for payments of $200 per month over five years, and the payment to the Trustee of any bequests or inheritances received, up to an amount sufficient to pay all claims in full, without interest. Without any such windfalls, this plan, because of the increase in administrative expenses and the lower plan payments, will pay a bit less to creditors than the first plan. There is still approximately a 16% payout, and the dividend under Chapter 7 is still zero.

The Bank is again the sole objector, and again alleges that the plan is not proposed in good faith.

The question of what is good faith in Chapter 13 is one that has troubled courts, debtors and practitioners for years, but with a number of recent Courts of Appeals decisions, a consensus is developing. In the Tenth Circuit, the epiphanal case is *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir., 1983). The Court in *Flygare* recognized that "good faith" is a subjective test in which various objective and subjective standards are weighed. The Court quoted with approval *In re Estus*, 695 F.2d 311, wherein it was said:

> The Bankruptcy Court must utilize its fact-finding expertise and judge each case on its own facts after considering

all the circumstances of the case. If after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied.

*Flygare* at 1347.

The Court then listed eleven factors which it said should be considered by the Bankruptcy Court, but noted that the list was not exhaustive, nor would each factor carry equal weight at all times, *Id.* at 1348.

Turning to the Eppers, some of the *Flygare* factors, namely the extent of preferential treatment between creditors, the extent of modification of secured claims, the existence of special circumstances such as inordinate medical expenses, the frequency of bankruptcy relief, and the burden on the Trustee are either insignificant or inapplicable.

Of the remaining factors, although there has been no judicial determination, it appears that Mr. Eppers defrauded the Bank of over $30,000, and that this debt would be non-dischargeable in Chapter 7. This, of course, only begins the inquiry.

The Eppers' Plan is now a five year plan, the maximum allowed. The payments themselves are not large, and are smaller than called for in the first plan. However, this appears to be due primarily to decreased family income. Furthermore, there appears to be no reserve in the budget for emergency needs. While possibly some of the expenses listed may be exaggerated, cross-examination of Mr. Eppers by the Bank did not so indicate. Nor did any evidence suggest the Debtors' income was likely to increase significantly during the life of the plan. Nor is there any indication of concealed assets or interests.

Inclusion of any inheritances or bequests eliminates the unseemly prospect of a sudden accession to unearned wealth while discharging a proportionally minor debt. Failure to include the expectancy in the plan payments, (melancholy prospect though it might be) would lead, under § 1306 to a sudden bloating of the Debtors' estate, with no corresponding increase in distributions to creditors. Where distribution is low without such an inclusion, and there is no provision for adjustment of the plan payments upward, not accounting for the possibility raises a large question as to the debtor's good faith. Aside from which, should the debtor not receive any inheritance, he has lost nothing by including it.

Finally, the Eppers have moved to Texas since the filing of the petition. They are essentially judgment proof, and, barring unforeseen circumstances, give every indication of remaining that way. If this Court refuses confirmation and dismisses the case, the Bank might well be able to obtain a valueless civil judgment, which could hang over the Debtors for fourteen years. N.M.Stat.Ann. § 37–1–2 (1983 Supp.). Mr. Eppers has shown himself capable of deception, but if deception is involved in this bankruptcy, no one has been able to point it out. If the Bank wants revenge, it can push for criminal sanctions. If the Bank wants to get even, it must abide with what the Debtors are able to do, and live with the plan. The "fresh start" is more than a debtor's cliche. It is a realization that there comes a time when creditors and debtors reach an impasse from which both must be extricated. The Bank and the Debtors both made mistakes; the Constitution and the Congress provide the way out.

The Eppers will not be given a discharge. They will earn a discharge. Should they fail to complete the plan, the case will be dismissed. Should the Bank prove fraud in the confirmation of this plan, discharge will be denied or revoked. In either case, the Bank will be free to pursue the Debtors as they wish. If the Eppers complete the plan, the Bank will be repaid part or all of what it mistakenly lent. The only significant difference between the plan and what the Bank could do outside bankruptcy is nine extra years of deathwatch.

The Bank's outrage is understandable. Mr. Eppers cheated, if not a friend, at least an old family acquaintance. But a lack of good faith in the incurring of a debt will

not in itself indicate a lack of good faith in the proposal of a plan.

Based on the foregoing, the Court finds that the plan is proposed in good faith. There being no other objections, Debtors' counsel will prepare and submit within ten (10) days an Order denying the objection and confirming the plan.