**In re Thomas Orozco CISNEROS and Mary Carmen Cisneros, f/d/b/a Carmelita's Mexican Restaurant, Debtors.**

Bankruptcy No. 89 B 11699 J.

United States Bankruptcy Court,
D. Colorado.

Feb. 9, 1990.

Milnor H. Senior, III, Senior and Cohen, P.C., Denver, Colo., for debtors.

Robert E. Markel, Hellerstein, Hellerstein & Shore, Denver, Colo., for Tri–State Bank.

### MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH,
Bankruptcy Judge.

THIS MATTER came on for hearing on February 2, 1990, upon the Debtors' Motion to Confirm their Second Amended Chapter 13 Plan (the "Plan") and the Objection thereto filed by Tri–State Bank ("Bank"). The Bank objects to confirmation alleging:

1. The Plan has not been proposed in good faith under the standards of *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983).

2. The Plan does not comply with 11 U.S.C. § 1325(a)(4).

3. The Plan does not comply with 11 U.S.C. § 1325(b)(1).

Intertwined with these issues is the Bank's Objection to Debtors' Claim of Exempt Property.

These Debtors filed a previous Chapter 13 Petition in September, 1985, and received a discharge on July 6, 1989, in Case No. 85 B 4952 M. The instant Chapter 13

Petition was filed August 28, 1989, less than two months after receiving their earlier discharge.

On September 12, 1989, the Debtors filed a Chapter 13 Statement which contained their proposed budget. They filed an Amended budget on October 20, 1989, and one week before the hearing they filed a 3rd budget on January 26, 1990. A comparison of those budgets follows.

|  | 9/12/89 | 10/20/89 | 1/26/90 |
|---|---|---|---|
| Estimated average future monthly income: |  |  |  |
| Husband | $2,106.00 | $2,228.05 | $2,228.05 |
| Wife | 850.50 | 969.91 | –0– |
| Estimated average future monthly expenses: |  |  |  |
| Home mortgage payment | 768.34 | 768.34 | 768.34 |
| Utilities (Total) | 325.00 | 325.00 | 215.00 |
| Electricity | 200.00 | 200.00 | 100.00 |
| Water | 50.00 | 50.00 | 50.00 |
| Telephone | 75.00 | 75.00 | 65.00 |
| Food | 650.00 | 750.00 | 690.00 |
| Clothing | 100.00 | 200.00 | 100.00 |
| Laundry & Cleaning | 40.00 | 50.00 | 30.00 |
| Newspapers, etc. | 20.00 | 40.00 | 40.00 |
| Medical & Drug | 100.00 | 150.00 | 50.00 |
| Insurance (not deducted from wages) (Total) | 212.00 | 87.00 | 42.00 |
| Auto | 80.00 | 80.00 | 42.00 |
| Home | 40.00 | –0– | –0– |
| Life | 7.00 | 7.00 | –0– |
| Medical | 85.00 | –0– | –0– |
| Transportation | 200.00 | 250.00 | 155.00 |
| Club & Union dues (not deducted from wages) | 27.00 | 27.00 | –0– |
| Other: |  |  |  |
| Car payment | 214.00 | 214.00 | –0– |
| Catering Truck | 250.00 | –0– | –0– |
| Haircuts | –0– | 50.00 | 50.00 |
| Cable TV | –0– | 75.00 | 35.00 |
| School expenses | –0– | 60.00 | 60.00 |
| Excess income over expenses | 58.16 | 151.62 | 42.71 |
| Plan Payment | 55.00 | 150.00 | 40.00 |

On September 12, 1989, the Debtors filed their plan analysis and reconciliation with Chapter 7. On October 20, 1989, they filed a new analysis and reconciliation. On January 26, 1990, they filed a third version. A comparison follows.

### TOTAL DEBT PROVIDED FOR UNDER THE PLAN

|  | 9/12/89 | 10/20/89 | 1/26/90 |
|---|---|---|---|
| Total Priority Claims |  |  |  |
| Unpaid Attorney's fees | $1,200.00 | $1,200.00 | $1,200.00 |
| Total Payments on Unsecured Claims | 600.00 | 3,622.72 | 390.00 |
| Total Trustee's Compensation | 180.00 | 482.28 | 180.00 |
| Total Debt and Administrative Expense | 1,980.00 | 5,305.00 | 1,770.00 |

RECONCILIATION WITH CHAPTER 7

| | 9/12/89 | 10/20/89 | 1/26/90 |
|---|---|---|---|
| Interest of Unsecured Creditors if Chapter 7 Filed | | | |
| Value of Debtor's Interest in non-exempt property | $2,068.00 | $1,350.00 | $1,350.00 |
| Less: Estimated Chapter 7 administrative expense | 335.00 | 295.00 | 295.00 |
| Less: Priority claims except administrative | 1,200.00 | 1,200.00 | 720.00 |
| Net to Unsecured Claims | 533.00 | –0– | 335.00 |
| Estimated Dividend to Unsecured under Chapter 7 | 533.00 | –0– | 335.00 |
| Estimated Dividend to Unsecured under Chapter 13 | 600.00 | 3,622.72 | 390.00 |

The Debtors showed the following liabilities and assets when they filed their petition:

| DEBTS | |
|---|---|
| Priority | $ 1,380.00 |
| Secured Claims | 84,282.00 |
| Unsecured Claims | 397.00 |
| Total Debts | $86,059.00 |

| PROPERTY | |
|---|---|
| Real Property | $85,000.00 |
| Automobiles | 8,000.00 |
| Personal Property | 1,000.00 |
| Household Goods | 1,500.00 |
| Other | 1,350.00 |
| Total Property | $96,850.00 |

The Debtors show the following in re their automobiles:
A 1979 GMC Van valued at $2,000.00 free and clear.
A 1988 Dodge Daytona valued at $4,000.00 with a lien of $3,632.00.
A Catering Truck valued at $2,000.00 with a lien of $1,650.00.

For unsecured debt the Debtors show $100.00 to Public Service Co. of Colorado; $27.00 to the Rocky Mountain News newspaper; $270.00 to Specialty Merchandise Corporation; and an unknown amount to Fred Tiller and/or Tri State Bank of possible lease liability on a restaurant lease.

In their first plan the Debtors proposed to pay Fidelity Finance Co., who holds a 2nd mortgage on their house and a lien on the 1985 Dodge Daytona, directly the pre-petition regular monthly payment in full because the collateral is "worth more than is owed." They also proposed to pay Joseph Hamilton, who holds a lien on the catering truck, directly the pre-petition regular monthly payment in full because the collateral is "worth more than is owed." They also proposed to pay Platte Valley Mortgage Co., who holds the 1st mortgage on their house, directly the pre-petition regular monthly payment in full because the collateral is "worth more than is owed."

The only substantive change in the Debtors' Amended Plan filed October 20, 1989, is that they proposed to sell the catering truck and pay off Joseph Hamilton, assume the loan, *or* surrender the collateral within 30 days.

Finally, in their Second Amended Plan filed January 26, 1990, the only change from the October 20, 1989 Plan is that they propose to sell the Dodge Daytona and pay off Fidelity Finance in full.

Although the Debtors listed the claim of the Bank as unknown in their Petition, they agreed at the hearing, for purposes of the hearing only, that the Bank's claim consisted of $9,500.00 in past due rental payments plus $16,800 as the present value of the future rental payments due under the lease, plus late charges, interest, costs and attorney's fees. The evidence at the hearing showed that the Bank filed suit in state court in May, 1989, and that the Debtors filed their petition within a day or two of a scheduled mandatory arbitration hearing in connection with the state court lawsuit.

The evidence also showed that none of the Debtors' budgets had any relationship to reality. The average telephone bill was $51.00 per month; the average cable TV bill was $51.00; the average electricity bill was $63.00. A review of those budgets, *supra*, fortifies this Court's observation that the Debtors are just manipulating numbers. Food expenses go from $650.00 to $750.00 and back to $690.00 per month with no explanation. Clothing expenses jump from $100.00 to $200.00 and back to $100.00 per month, again with no explanation. Laundry and cleaning expenses vary as much as 20%, with no explanation. Newspapers and magazines jump 100%, with no explanation. Expenses for home, health and life insurance just simply disappear, with no explanation.

At the hearing the Debtors admitted they had paid post-petition a total of $175.00 to an attorney on a pre-petition claim.

Just prior to the hearing, Mrs. Cisneros quit her job as a meat wrapper with Albertson's due to a back injury. She testified that she had worked there for 11 years although the original bankruptcy filing said eight years. When these Debtors filed their previous bankruptcy in 1985 she said she had been working at Albertson's only 6 months. In any event, she claimed she had no entitlement to workman's compensation (even though she testified she was injured on the job), no pension funds, and no accrued vacation or sick pay—or at least she did not know if she was entitled to any of these benefits. She also testified on direct examination that she had sold the catering truck to "friends" who had simply assumed the outstanding loan, although she had no documentation of the sale or the assumption. On questioning by the Court she said she sold the truck to her sister who had assumed the loan. In any event, if the Debtors have sold the truck, it was post-petition. They listed the value of the truck at $2,000.00, and yet apparently sold it for $1,650.00 (the amount of the loan). That truck was property of the estate and the Debtors had no right to sell such property except upon application to this Court and upon notice and hearing. They have, in effect, given away $350.00 of equity that would have been available to their unsecured creditors.

Mrs. Cisneros also testified that the only reason they filed the within petition was because of the Bank's claim.

Upon questioning by the Court, Mrs. Cisneros admitted that the Debtors have numerous items of personal property that they listed in the previous bankruptcy, but which are not listed in the instant case, e.g. a stove, dishwasher, microwave, coffee maker, air conditioner, 2 wall clocks, dining room set, high chair, piano, mirror, guitar, telephones, crib, etc.

This Court finds that not only were the various plans filed by these Debtors not filed in good faith under the standards of *Flygare, supra*, but that the petition itself was filed in bad faith. The Debtors had just received a Chapter 13 discharge less than two months earlier. They knew approximately what the Bank's claim was, but failed to list any amount. The sole purpose of the petition was to eliminate the Bank's claim. Their only other unsecured debt totaled only $327.00. And although Mrs. Cisneros has recently quit her job, that fact alone does not explain the wild fluctuations in their proposed budgets. They failed to list property. They sold property of estate without court authorization, to the detriment of the unsecured creditors. Their listings of Mrs. Cisneros' term of employment in this and their previous petition are quite different. If the Bank's claim is anywhere near what is

claimed, their payments to unsecured creditors herein are minuscule. They did not deal in good faith with the Bank pre-petition. On February 23, 1989, when the Bank sent them a notice to pay all future rent to the Bank under an Assignment of Rents and when contacted by the Bank that same day, Mrs. Cisneros told the Bank that the check for the March rent was in the mail, but the Bank never received any payments. Instead, sometime at the end of February, 1989, without any notice to the Bank, they vacated the premises. Then, on the eve of a mandatory arbitration hearing, they filed their Chapter 13 petition. Because of these findings it is unnecessary to rule upon the other objections of the Bank. It is, therefore,

ORDERED that the Motion to Confirm is denied.

FURTHER ORDERED that the Debtors shall have ten (10) days from the date of this order to (1) convert this case to Chapter 7 or (2) dismiss the case, failing which the case will be dismissed without further notice or hearing.