**IN RE: Denise Rae DEESE, Debtor.**

Case No. 12–34694

United States Bankruptcy Court, D. Colorado.

Signed July 28, 2017

Christopher German, Denver, CO, for Debtor.

Chapter 13 Trustee-Zeman, Chapter 13 Trustee, Denver, CO, for Trustee.

## ORDER

Michael E. Romero, Chief Judge

THIS MATTER comes before the Court on the Modified Chapter 13 Plan[1] and Motion for Post–Confirmation Modification[2] filed by Debtor Denise Rae Deese and the objection filed by the Chapter 13 Trustee Sally Zeman.[3]

### JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b)

---

1. Dkt. No. 38.

2. Dkt. No. 41.

3. Dkt. No. 44.

and 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) as it involves confirmation of a Chapter 13 plan of reorganization. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

On December 5, 2012 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the U.S. Code, 11 U.S.C. §§ 101, *et seq.* ("Bankruptcy Code").[4] The Debtor's Amended Chapter 13 Plan ("Plan") was confirmed by the Court on February 6, 2013 ("Confirmation Date").[5]

The confirmed Plan required the Debtor to make plan payments of $240.00 per month for one month, $260.00 per month for twenty-nine months, and $388.00 per month for the remaining thirty months of the plan.[6] The confirmed Plan also provided for the following distributions: $1,765.00 in trustee's compensation; $3,111.00 in attorney fees; $1,007.00 in taxes to Clear Creek County; $11,912.00 in prepetition arrears to Wells Fargo Home Mortgage; $1,238.00 in pre-petition arrears to First Tech FCU; and $386.00 in Class 4 general unsecured claims.[7]

The Debtor's first attempt at modification of the Plan came in September 2016.[8] This first modified plan provided for the following distributions: $1,492.00 in Trustee's fees; $3,611.00 in attorneys' fees; $1,007.00 in taxes to Clear Creek County; $7,051.00 in prepetition arrears to Wells Fargo Home Mortgage (the amount the Trustee had previously distributed); $1,238.00 in pre-petition arrears to First Tech FCU; and $2,013.00 in Class 4 general unsecured claims.[9] The Trustee objected to the proposed modified plan, arguing it was not proposed in good faith and failed to fully provide for the Trustee's fee of 10%.[10] The Trustee's objection as to lack of good faith was premised on the proposed modified plan providing for plan payments of only fifty-nine months as opposed to the sixty months required by Debtor's applicable commitment period of five years, and the proposed plan's reduction of plan payments from $388 per month to $200 per month without filing amended Schedules I and J.[11]

In response to the Trustee's objections, the Debtor filed a second modified plan ("Modified Plan") and a Motion for Post–Confirmation Modification ("Motion") on October 31, 2016.[12] In connection with the Modified Plan, the Debtor also filed amended Schedules I and J.[13] The Motion states since the Confirmation Date, the Debtor sold her home and the deed of trust held by Wells Fargo Bank, N.A. secured by the home was satisfied.[14] The Modified Plan removes the default payments scheduled to be paid to Wells Fargo Bank, N.A.[15] The Debtor also proposes to lower her monthly payments to account for

---

4. Unless otherwise specified, all references herein to "Section," "§" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

5. Dkt. No. 21.

6. Dkt. No. 56, ¶ 3.

7. *Id.* at ¶ 4.

8. *Id.* at ¶ 5.

9. *Id.* at ¶ 6.

10. *Id.* at ¶ 7.

11. *Id.*

12. Dkt. Nos. 38 and 41.

13. Dkt. Nos. 39 and 40. The Debtor filed second Amended Schedules I and J on February 23, 2017. *See* Dkt. Nos. 52 and 53.

14. Dkt. No. 34, ¶ 3.

15. Dkt. No. 34, ¶ 4.

the loss of part-time employment and an anticipated increase in housing expenses.[16]

The second Modified Plan requires the Debtor to make plan payments totaling $13,212.00 for months 1–44 and $215.00 per month for the remaining sixteen months.[17] The Modified Plan also provides for the following distributions: $1,665.00 in Trustee's fees; $3,611.00 in attorneys' fees; $1,007.00 in taxes to Clear Creek County; $7,051.00 in pre-petition arrears to Wells Fargo Home Mortgage (the same as the amount the Trustee had previously distributed); $1,238.00 in pre-petition arrears to First Tech FCU; and $2,080.00 in Class 4 general unsecured claims.[18]

The Trustee objected to the Debtor's proposed Modified Plan, arguing it also was not proposed in good faith. The Trustee's objection to the second Modified Plan alleged a review of the Amended Schedule I filed on October 31, 2016 shows Debtor is over withholding for taxes by approximately $300.00 per month and Debtor understated the EM–E payments she receives from her employer, the United States Postal Service, by approximately $490.00 per month.[19] Based on these and other adjustments, the Trustee asserts, the Debtor could make monthly payments going forward of $1,000.00 per month.[20]

The Court held evidentiary hearings on the Debtor's Motion and Modified Plan and the Trustee's objection thereto on March 22 and May 22, 2017, following which the Court took the matter under advisement.

## DISCUSSION

Pursuant to § 1329(a), "[a]t any time after confirmation of the plan but before the completion of the payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed secured claim." [21] Section 1329(b)(1) further provides: "Section 1322(a), 1322(b) and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." [22] The Trustee's objection to the Second Modified Plan is based on the requirement under § 1325(a)(3) for plans to have been "proposed in good faith and not by any means forbidden by law." [23] The Trustee argues the lack or absence of good faith in this case warrants denial of Debtor's Motion.

 Courts in the Tenth Circuit reject a *per se* application of rules to determine good faith in favor of evaluating the totality of a debtor's circumstances.[24] The Tenth Circuit Court of Appeals has long considered the following factors as being relevant to a determination of good faith under § 1325(a):

1) the amount of the proposed payments and the amount of the debtor's surplus;

2) the debtor's employment history, ability to earn and likelihood of future increases in income;

3) the probable or expected duration of the plan;

4) the accuracy of the plan's statements of the debts, expenses and percentage

**16.** *Id.* at ¶¶ 6–7.

**17.** Dkt. No. 56, ¶ 9.

**18.** *Id.* at ¶ 10.

**19.** *Id.* at ¶ 11. The parties stipulated the "EM–E" payments Debtor receives from the United States Postal Service are for the reimbursement of costs Debtor incurs for using her own vehicle in her job as a rural mail carrier. *Id.*

**20.** Dkt. No. 44, ¶ 1.

**21.** 11 U.S.C. § 1329(a)(1).

**22.** 11 U.S.C. § 1329(b)(1).

**23.** 11 U.S.C. § 1325(a)(3).

**24.** *In re McGehan,* 495 B.R. 37, 41 (Bankr. D. Colo. 2013).

repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5) the extent of preferential treatment between classes of creditors;

6) the extent to which secured claims are modified;

7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

8) the existence of special circumstances such as inordinate medical expenses;

9) the frequency with which the debtor has sought relief under the Bankruptcy [Code];

10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) the burden which the plan's administration would place upon the Trustee.[25]

No single factor is determinative of the good faith issue in any given case.[26] Nor is such a determination made by comparing the number of factors favoring the debtor to the number favoring the objectors.[27] The weight given to each factor varies depending on the facts of a particular case.[28] "The good faith test ultimately requires the Court to make a subjective determination of whether the Plan, and the process employed leading up to it, are in keeping with the spirit of Chapter 13 and its intended purposes. The debtor ultimately retains the burden of establishing this good faith."[29]

■ Based on the evidence and testimony presented by the parties, the Court views the first, third, fourth, and tenth *Flygare* factors as applicable to these proceedings. Essentially, the Trustee argues

the Debtor's unnecessary increase in her expenses and the resulting reduction in payments to creditors coupled with inconsistencies and inaccuracies in her stated income and expenses demonstrate an intent to avoid paying to creditors and a lack of good faith on Debtor's part in proposing the Modified Plan.

The Debtor has been gainfully employed as a rural mail carrier for the United States Postal Service in Idaho Springs, Colorado, for the past thirty-eight years. There is no evidence Debtor's employment will not continue until her retirement. At the time she filed her bankruptcy petition, the Debtor served as an elected councilwoman in Idaho Springs, a position for which she received $400 per month. In August 2016, the Debtor sold her residence in Idaho Springs and moved to a new residence in Littleton, Colorado. The move caused the Debtor's travel for work to increase from approximately two miles to approximately fifty miles round-trip, and her transportation expenses increased as a result. The move out of Idaho Springs also made the Debtor ineligible to serve as a councilwoman and she relinquished that position and the additional income from it.

The Debtor filed her Modified Plan after she sold her residence in Idaho Springs and sought to modify her confirmed Plan to remove payments associated with the residence. The Debtor received $10,000 in proceeds from the sale of her residence in Idaho Springs, which the Debtor testified she used to hire movers. At the time she sold her residence, the Debtor's mortgage

**25.** *Flygare v. Boulden,* 709 F.2d 1344, 1347–1348 (10th Cir.1983) (quoting factors set forth in *In re Estus,* 695 F.2d 311, 317 (8th Cir. 1982)) (quotation marks omitted); *see also In re Racine,* 2013 WL 412914, at *2–3 (Bankr. D. Colo. Feb. 1, 2013) (applying *Flygare* factors); *see also In re Arrigo,* 399 B.R. 700, 707 (Bankr. D. Colo. 2008) (same).

**26.** *In re Loper,* 367 B.R. 660, 670 (Bankr. D. Colo. 2007).

**27.** *Id.*

**28.** *Id.*

**29.** *Id.* (citing *In re Ford,* 345 B.R. 713, 716 (Bankr. D. Colo. 2006)).

payments were approximately $1,500. Although she testified she was under no duress or compulsion to sell her Idaho Springs residence, the Debtor testified she moved from Idaho Springs to Littleton in anticipation of caring for her elderly and ailing mother, who has less difficulty breathing at the lower elevation. The Debtor also testified she encountered difficulties in her attempts to purchase a new home, as her bankruptcy case and low credit scores preventing her from obtaining financing. After viewing at least two other comparable rental properties, the Debtor signed a rental lease agreement for her current residence, which the Debtor testifies is 2,000 square feet and has four bedrooms and three bathrooms. The Debtor pays $2,000 per month in rent under her current lease.[30] As a result, the Debtor's monthly housing costs increased by approximately $500, a fact which the Debtor acknowledged in her testimony. The Trustee argued these additional housing expenses, and the resulting increase in transportation expenses, were incurred voluntarily and unnecessarily by the Debtor.

The Debtor's mail route, the only route in Idaho Springs, is seventy miles long. The Debtor testified she uses her own vehicle for her mail route, and receives reimbursement payments, the "EM–E" payments, from the United States Postal Service. The EM–E payments Debtor receives are for reimbursement of auto expenses, gas, and maintenance costs Debtor incurs for using her own vehicle on her mail route.[31] The reimbursement does not cover the additional mileage and expense of Debtor's commute from Littleton. According to Debtor's second amended Schedule J, the Debtor incurs monthly transportation costs of $625.[32] Debtor's second amended Schedule I reflects receipt of $937.50 per month in EM–E reimbursement payments,[33] although Debtor testified this is a not a fixed amount per month and is not considered income for tax purposes. The Trustee asserts the difference of approximately $300 could be used to pay her creditors.

The Trustee also argued additional unnecessary expenses could be funneled into the Debtor's plan payments for the benefit of creditors. For example, the Debtor's charitable contributions reflected on her Schedule J have increased since the original Plan was confirmed and the Debtor has made increased contributions to her retirement funds. Additionally, the Debtor testified she used approximately $12,000 in tax refunds received during her bankruptcy case for personal expenses, including new eyeglasses, replacing personal computing equipment, and making a "retirement deposit" to the United States Postal Service to ensure she receives her full retirement benefits.[34] The Court notes the parties acknowledged the Plan did not obligate the Debtor to turn over tax refunds to the Trustee.

The Court found the testimony of the Debtor to be credible and straightforward. Although, and despite the Debtor's testimony as to their accuracy, the Trustee pointed out several inconsistencies between the Debtor's amended schedules and evidence of her income and expenses, there was no evidence the Debtor attempted to mislead the Court. While the Court recognizes the Debtor's household expenses, including her monthly housing expenses, increased following her move from Idaho Springs, the Court is mindful of the

30. Debtor's Exhibit 8.

31. Dkt. No. 56, ¶ 11.

32. Debtor's Exhibit 1.

33. Debtor's Exhibit 2.

34. Debtor's Exhibits 5, 6 and 7.

current state of the housing market in the Denver metro area and the unaffordability of housing to many of those who live and work in the area. The Court also notes, while the Debtor was not required under the confirmed Plan to turn over her tax refunds to the Trustee, those funds could have been used to pay creditors now subjected to the reduced monthly payments under the proposed Modified Plan. However, the Court does not believe the use of those funds for the expenses as testified to by the Debtor are unreasonable as to support a finding the Modified Plan was not proposed in good faith.

The Court must also consider the current stage of this case and its proximity to the end of the life of the Debtor's plan payments. The Debtor is current on her plan payments including during the time since her proposal of the Modified Plan. At the time of the hearings on this matter, the Debtor was in the fifty-third month of her plan payments with, at the time of this order, approximately six months remaining. To deny approval of the Modified Plan with only six months remaining on the Debtor's plan payments with the Debtor's current monthly income and expenditures would work an undue hardship on the Debtor and potentially force the Debtor towards a dismissal or conversion of her case. Had the Debtor sought the same modifications to her plan during the middle of this case or at the time Debtor directed her tax refunds towards personal expenses rather than creditors, the Court would have much less sympathy. However, the Court finds no evidence the Debtor is undertaking the proposed modification at this stage in an effort avoid paying her creditors or that her motivation behind the modifications is insincere.

In prior cases concerning whether a debtor's proposed Chapter 13 plan has been filed in good faith, this Court noted almost thirty years after *Flygare* was decided, the Tenth Circuit in *Cranmer* noted the Bankruptcy Code was amended to include § 1325(b), containing "ability to pay" criteria which subsumed most of the *Flygare* factors and gave the good faith inquiry "a more narrow focus." [35] The *Cranmer* Court indicated a bankruptcy court must also consider "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." [36] In *Khan*, this Court applied these factors alongside those prescribed by *Flygare*.[37] Further, this Court applied the more narrow inquiry in a case where the trustee's objections were exclusively on the debtor's ability to pay—an issue specifically addressed by § 1325(b)(1).[38]

However, even under the more narrowly focused inquiry, the Court finds no basis to deny approval of the Debtor's Modified Plan. As discussed above, despite inconsistencies among Debtor's stated income and expenses pointed out by the Trustee, the Court found the Debtor's testimony to be credible and finds no evidence her income and expenses were unsupported. Nor does the Court find there to be any evidence the Debtor has made any fraudulent misrepresentations to mislead the Court or any attempts to unfairly manipulate the Bankruptcy Code.

---

**35.** *In re Khan*, 2015 WL 739854, at *4 (Bankr. D. Colo. 2015) (citing *In re Cranmer*, 697 F.3d 1314, 1318–19 n. 5 (10th Cir. 2012); *In re McDonald*, 508 B.R. 187, 206 (Bankr. D. Colo. 2014) (in context of good faith factor in determining whether to convert or dismiss Chapter 13 case for "cause").

**36.** *In re Cranmer*, 697 F.3d at 1319 n. 5.

**37.** *In re Khan*, 2015 WL 739854 at *4–6.

**38.** *In re McGehan*, 495 B.R. at 42.

The Court must note it does not find the Trustee's disputes with the Debtor's proposed modifications to be unreasonable. The Trustee raised perfectly legitimate objections based on the Debtor's change in income and expenses and the use of funds for personal expenses. However, under the circumstances of this case, the Court considers the time remaining on the Debtor's plan payments the driving factor behind its decision to grant the Debtor's Motion and approve the Modified Plan.

Accordingly, based on the totality of the circumstances in this case the Court finds the Modified Plan was proposed in good faith and thus meets the requirements of §§ 1329(a) and 1325(a).

## CONCLUSION

IT IS THEREFORE ORDERED the Debtor's Motion for Post–Confirmation Modification is hereby granted. The Court will enter a separate order approving the Debtor's Modified Plan.