Kimberley H. Tyson, United States Bankruptcy Judge
THIS MATTER came before the Court on the Second Amended Chapter 13 Plan dated February 15, 2018 (Docket # 32) filed by Debtors Nathan John Boisjoli and Jennifer Kay Warren (collectively, "Debtors") and the Objection thereto filed by Adam Goodman, Chapter 13 Trustee ("Trustee") on March 8, 2018 ("Objection") (Docket # 36). The parties filed legal briefs and the Court is now prepared to rule, and hereby finds and concludes as follows:
I. FACTUAL BACKGROUND
The facts are not disputed. Debtors filed their Chapter 13 case on October 3, 2017. Debtors are "above median" income debtors with a combined monthly income of $8,886.47 and monthly expenses of $6,225.53[1] , for monthly net income of $2,660.94. See Amended Schedules I and J filed February 23, 2018 (Docket # 34).
Debtors filed their Second Amended Chapter 13 plan on February 15, 2018 (Docket # 32) (hereafter, the "Plan"), proposing to pay 100% of all timely filed unsecured, general non-priority claims (Class IV) over 60 months. In the Plan, *470 Debtors propose to make the following payments: $1,094.00 for month 1; $1,222.00 per month for months 2 through 4; $1,028.00 per month for months 5 through 59; and $1,034.00 for month 60. The Plan provides "Debtors will amend or modify their plan to pay all Class IV claims in full." See Plan, Part 12, p. 6 (Docket # 32).
Trustee objects to the Plan because Debtors could pay all amounts due under the Plan in far fewer than 60 months but are electing not to do so, effectively preventing creditors from recouping funds they would receive sooner if the Plan payments were increased. Trustee argues Debtors' full disposable income should be committed to plan payments now (while those funds are available) to mitigate risk of loss to the creditors, since there is no certainty their disposable income will remain sufficient to repay 100% of general unsecured creditors for the duration of the proposed 60-month term. Accordingly, Trustee contends the Plan violates Section 1325(a)(3)[2] and the purpose and spirit of the Bankruptcy Code.
Trustee argues in the alternative that if the Court does not order higher plan payments and thus decrease the duration of the Plan, the Court should impose modifications in order to mitigate the risk of loss to the creditors, such as adding provisions to the Plan requiring concurrent payments to general unsecured creditors, or limiting Debtors' ability to obtain a Chapter 13 discharge if they fail to pay 100% of the unsecured claims as proposed, or prohibiting Debtors from seeking to modify the Plan at a later date to reduce the dividend to unsecured creditors.
Debtors maintain the Plan fully complies with the letter and spirit of the Bankruptcy Code by proposing a 100% plan over the applicable commitment period pursuant to Section 1325. Debtors contend Trustee seeks to deprive them of their rights under the Bankruptcy Code and Trustee's proposed modifications to the Plan deprive them of due process while giving creditors rights that do not exist under the Bankruptcy Code.
The parties agree confirmation of the Plan hinges upon a legal issue: whether above-medium debtors can be forced to pay a 100% plan in fewer than 60 months simply because they have the ability to do so. If the Court accepts Debtors' position, the Court must then consider whether Trustee's proposed modifications to the Plan should be required.
II. DISCUSSION
Chapter 13 of the Bankruptcy Code "enable[s] certain debtors to repay all or a percentage of their debts according to a court-approved plan." Flygare v. Boulden , 709 F.2d 1344, 1346 (10th Cir. 1983). "Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor." S. Rep. No. 95-989, at 141 (1978), reprinted in 1978 U.S.C.C.A.N. 5787.
Trustee asserts the Plan does not comply with Section 1325(a)(3) under the circumstances, or otherwise violates the purpose and spirit of the Bankruptcy Code. No other bar to confirmation has been raised.
Pursuant to Section 1325(a)(3), a plan must be "proposed in good faith and not by any means forbidden by law" to be confirmable. 11 U.S.C. § 1325(a)(3). Courts in this Circuit examine good faith on a case-by-case basis, and have traditionally considered the factors set forth in *471 Flygare v. Boulden , 709 F.2d 1344, 1347-48 (10th Cir. 1983).[3]
Since Flygare was decided, however, the Bankruptcy Code was amended to include the provisions of Section 1325(b). Anderson v. Cranmer (In re Cranmer) , 697 F.3d 1314, 1319, n. 5 (10th Cir. 2012). As noted by the Tenth Circuit, " Section 1325(b)'s 'ability to pay' criteria subsumes most of the [ Flygare ] factors ...' " Id. (quoting Educ. Assistance Corp. v. Zellner , 827 F.2d 1222, 1227 (8th Cir. 1987) (internal quotation omitted) ). Accordingly, in the Tenth Circuit, the good faith inquiry now has a narrower focus: "[a] bankruptcy court must consider 'factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.' " Id.
Cranmer is instructive. Cranmer, an above-median debtor, excluded his Social Security income ("SSI") from his projected disposable income calculation. Cranmer , 697 F.3d at 1315. As a result, Cranmer's plan "allowed him to retain a portion of his SSI rather than commit it to the repayment of creditors." Id. at 1316. The bankruptcy court denied confirmation of Cranmer's plan, concluding "SSI must be included in the projected disposable income calculation and that Cranmer's failure to do so showed he did not propose his plan in good faith." Id.
But the Tenth Circuit disagreed, holding Cranmer's exclusion of his SSI was expressly permitted by Sections 101(10A)(B) and 1325(b)(2). Cranmer , 697 F.3d at 1317. The Tenth Circuit found the good faith inquiry and calculation of projected disposable income were not separate inquires: "[w]hen a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to ... that [calculation] cannot constitute a lack of good faith." Id. at 1319. "It simply was not bad faith for Cranmer to adhere to the provisions of the Bankruptcy Code and, in doing so, obtain a benefit provided by it." Id.
Section 1325(b)(1) provides two alternatives when an objection to plan confirmation is lodged, as here. Section 1325(b)(1) provides:
If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan -
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or *472 (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
11 U.S.C. § 1325(b)(1) (emphasis added). "If an unsecured creditor or the bankruptcy trustee objects to confirmation, § 1325(b)(1) requires the debtor either to pay unsecured creditors in full or to pay all 'projected disposable income' to be received by the debtor over the duration of the plan." Hamilton v. Lanning , 560 U.S. 505, 508-09, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).
Debtors have complied with Section 1325(b)(1)(A) by proposing a 100% plan. Sections 1325(b)(1)(A) and (B) are in the disjunctive, separated by the word "or." Because Debtors have proposed a 100% plan in accordance with Section 1325(b)(1)(A), they are not required to apply all of their projected disposable income received during the applicable commitment period to make payments to unsecured creditors pursuant to Section 1325(b)(1)(B).
In addition, Debtors propose to perform their Plan within the timeframe required under Section 1325(b)(4). Since Debtors have above-median income, Section 1325(b)(4) directs that the "applicable commitment period" for their plan "shall be ... not less than 5 years." § 11 U.S.C. 1325(b)(4)(A)(ii). Section 1325(b)(4)(B) permits, but not requires , the "applicable commitment period" to be less than 5 years: the "applicable commitment period ... may be less than ... 5 years ... but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." § 11 U.S.C. 1325(b)(4)(B).
The language of Section 1325(b)(1) and (b)(4) is clear and unambiguous. Debtors have complied with those provisions of the Bankruptcy Code. As with the Cranmer debtor, this Court does not construe Debtors' adherence to those provisions as lacking good faith, without any other specific factual allegations of bad faith to the contrary.
This Court is in agreement with other decisions within this District directly on point. See In re Conklin , Case 17-16247 MER, ECF No. 43 (Bankr. D. Colo. March 28, 2018); In re McGehan , 495 B.R. 37 (Bankr. D. Colo. 2013). In Conklin , Chief Judge Romero recently confirmed a plan that provided for 100% distribution to unsecured creditors over a 5-year period, proposed by above-median debtors who had net disposable income of almost $2,500 per month but were proposing plan payments of $1,000 per month for the first 14 months, followed by $1,370 per month for 46 months, because Section 1325(b)(1)(A) and (B) are in the disjunctive; the plain language of Section 1325(b)(1) permitted confirmation. In re Conklin , Case 17-16247 MER, ECF No. 43 at *5.
In McGehan , Judge Brooks concluded that with the addition of Section 1325(b)(1) to the Bankruptcy Code, "the amount of the Debtors' repayment, standing alone , is an insufficient basis for finding a lack of good faith under either the Flygare factor analysis or a narrow analysis." In re McGehan , 495 B.R. at 43 (emphasis in original). In McGehan , Judge Brooks found the debtors proposed their plans in good faith even though they proposed to pay in five years what they could easily have paid in less than three years, because in enacting the "ability to pay" test under Section 1325(b)(1), "Congress drew a bright line and determined that debtors can overcome objections to confirmation by committing all of their disposable income *473 or paying all claims in full. There is no requirement that debtors do both." In re McGehan , 495 B.R. at 44 (emphasis in original). In addition, "[j]ust as consideration of the amount of debtors' proposed payments has been narrowed by § 1325(b)(1), so too has consideration of the length of debtors' plans been narrowed by the enactment of § 1325(b)(4)" due to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Id. Accordingly, Judge Brooks found that by proposing 5-year commitment periods, the above-median debtors in McGehan had done all that was required of them Section 1325(b)(4).
The Court recognizes that the good faith requirement still applies to situations in which a debtor "complies with § 1325(b)(1), yet, has done so in a way which is based upon misrepresentations or unfair manipulation of the Code." McGehan , 495 B.R. at 45. In those situations, "the permissive language in § 1325(b)(1) will allow the Court to bar confirmation pursuant to the good faith requirements of § 1325(a)(3)." Id. See also , In re Williams , 394 B.R. 550, 572 (Bankr. D. Colo. 2008) ("where a debtor complies with § 1325(b), the sufficiency of the assets devoted to the plan is not a basis for a finding of lack of good faith under § 1325(a)(3), unless there is a showing of some sort of manipulation, subterfuge or unfair exploitation of the Code by the debtor.")
Here, Trustee does not allege Debtors have stated their debts and expenses inaccurately, or that they made misrepresentations in connection with their bankruptcy or their Plan to mislead the Court or any party. Nor are there allegations Debtors have engaged in any deceitful conduct. The Court finds Debtors have not unfairly manipulated the Bankruptcy Code by adhering to the requirements set forth in Section 1325 in these circumstances; the Bankruptcy Code expressly permits the choices Debtors have made with respect to the repayment amounts and timing they propose in the Plan. The Court finds under the facts of this case, those choices do not show a lack of good faith or otherwise violate the purpose and spirit of Chapter 13.
Trustee urges this Court to impose additional provisions in the Plan to mitigate the risk of loss to creditors that might occur during the 5-year duration of the Plan. In support of imposing additional provisions that would limit Debtors ability to obtain a discharge or limit Debtors' ability to modify their Plan without also providing for full payment to creditors, Trustee cites several decisions from the Western District of Texas, including In re Crawford , 2016 WL 4089241 (Bank. W.D. Tex. 2016) and In re Molina , 2015 WL 8494012 (W.D. Tex. 2015). In those cases, conditions upon confirmation of the debtors' plans were imposed or upheld under similar circumstances, such as requiring the debtors in those cases to pay all claims in full to receive a discharge and barring the debtors from modifying their plans to anything less than 100% distribution to creditors.
While the Court appreciates Trustee's efforts, the relief Trustee seeks is speculative in nature. More importantly, the Court cannot condition Debtors' ability to seek a discharge or a plan modification upon a promise they pay all creditors in full. Imposing such conditions directly contravenes other provisions of the Bankruptcy Code, and is prohibited under the Supreme Court's holding in Law v. Siegel , 571 U.S. 415, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) (bankruptcy court could not employ Section 105(a) to surcharge exempt property for trustee's litigation costs, in direct contravention of the right to claim a homestead exemption given by *474 Section 522). See, e.g. , In re Conklin , Case 17-16247 MER, ECF No. 43 at *5, n. 27; In re Eubanks , 581 B.R. 583, 589-90 (Bankr. S.D. Ill. 2018) (court could not use Section 105(a) equitable powers to add similar conditional language to 100% Chapter 13 payment plan that was otherwise confirmable under Section 1325, even though the debtors were not committing all of their projected disposable income; proposed language added requirements for confirmation not otherwise found in Sections 1325(a) or (b) ); Martinez v. Viegelahn (In re Martinez) , 581 B.R. 486, 497 (W.D. Tex. 2017) (similar conditional language contravened the debtors' express rights under Section 1329(a) to modify their Chapter 13 plan).
As noted by Judge Romero in Conklin , Trustee is not wholly without recourse in this situation; the good faith requirement of Section 1325(a)(3) is incorporated into any post-confirmation modification analysis pursuant to Section 1329(b)(1). In re Conklin , Case 17-16247 MER, ECF No. 43 at *6. "If, in the future, the undesirable scenario identified by the Trustee ... comes to pass, the Court may deny modification upon finding the result would significantly reduce the distribution to creditors, especially if the modification is based on circumstances which could have been reasonably foreseen prior to confirmation." Id.
With respect to Trustee's suggestion of requiring concurrent distribution to general unsecured creditors, Section 1322(b)(4) permits - but does not require - concurrent distribution. Without reaching the issue of whether Section 1325(b)(1)(B) contemplates concurrent distribution to unsecured creditors as Trustee contends, compliance with Section 1325(b)(1)(B) is not required because the Plan complies with the alternative under Section 1325(b)(1)(A).
Only a debtor may propose a Chapter 13 plan. 11 U.S.C. § 1321. Section 1325(a) mandates the Court "shall confirm a plan" if it meets the requirements stated therein. 11 U.S.C. § 1325(a). The Court finds the Plan meets the requirements of Section 1325(a) and was proposed in good faith as required by Section 1325(a)(3). In addition, the Plan complies with Section 1325(b)(1)(A). The Court will not impose additional provisions or conditions upon the Plan that are not required under the Bankruptcy Code under the circumstances of this case.
Accordingly, it is
HEREBY ORDERED that the Chapter 13 Trustee's Objection to the Plan is OVERRULED; and it is
FURTHER ORDERED Debtors shall file a Verification of Confirmable Plan with in fourteen (14) days.

Debtors' monthly disposable income under 11 U.S.C. § 1325(b)(2) (calculated on their Form 122C-2) is less than the delta between Schedules I and J.

All references to the Bankruptcy Code or to Sections thereof are to 11 U.S.C. § 101 et seq.

The relevant factors include:
(1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden the plan's administration would place upon the trustee.
Flygare v. Boulden , 709 F.2d 1344, 1347-48 (10th Cir. 1983) (citing United States v. Estus (In re Estus) , 695 F.2d 311, 317 (8th Cir. 1982) ).